By the Court. Bosworth, J.
The jury have found, that the detention of the cars, between Obispo and Aspinwall, by the conductor of the defendants, was—first, “ a wilful act of the conductor second, that, in detaining the train as he did, the conductor acted “ negligently, or without reasonable care and judgment.”
The inquiry, whether the act was a wilful act, the jury must have understood to have been an inquiry whether it was done, knowing that it was a violation of his duty, and conscious that there was, not only no necessity for it, but that it was without any thing existing to excuse it. Understanding the jury to have found, that the act, of stopping and leaving the train over night, was such an act of wilful misconduct, the question arises, Is the defendant liable for the damages resulting to Mrs. Weed?
*196 In Vanderbilt v. The Richmond Turnpike Co., (2d Coms. 479,) the Court of Appeals decided, that a corporation is not liable for a wilful trespass upon a stranger, committed by a person employed by it, although the act be authorized by its president and general agent. In that case, the defendant’s boat was designedly run against the plaintiff’s boat, by the agent of the defendant. That act was a wilful trespass. The action was brought to recover damages for the injury resulting from it. It was held, that, for such an act of the agent, the corporation was not liable.
What rule should have been applied, if a passenger on the defendant’s boat had been injured, by such misconduct, and an action to recover damages had been brought by him, was not stated, nor was any opinion intimated by the court. In the case cited, the defendant owed no duty to the plaintiff, except such as each citizen owes to every other.
In the case at bar, the defendant owed to each of the plaintiffs such duties as the law imposes upon common-carriers of passengers, in respect to persons whom they undertake to carry from point to point, upon the route on which their business is conducted.
The conductor, as the agent of the defendant, had charge of the train. Its movements, under the rules and regulations of the company, were confided to him. In leaving the train where he did, he was acting in the course of his employment. He was as clearly so acting, as in moving forward the train to the place at which it was left. The cars, and the passengers on board of them, were intrusted to his care and control.
Whether he left them where he did, in known disobedience of the general regulations, or of a special order of the company, cannot affect the question of the actual liability of the company. (Phil. and Reading Railroad Co. v. Derby, 14 How. (U. S.) S. C. R. 468.)
Ho case has been cited, nor has any come to our notice, which decides that a carrier of passengers is not liable to the latter for injuries resulting from the wilful misconduct of the carrier’s agent, in his mode of managing the vehicle containing the passengers.
Wright v. Wilcox (19 Wend. 343) was not an action by a passenger against a carrier of passengers, but is the ordinary case of a suit by a third person, to whom the defendant owed no special duty, to recover for a wilful injury done by defendant’s servant, while driving the defendant's carriage. It did not involve the question, *197 of the nature or extent of the liability of a passenger-carrier, for injuries to his passengers, resulting from the wilful misconduct of the servant, in the manner of transacting the business of the carrier.
The law imposes, upon the carrier of passengers, the duty of providing for their safe conveyance, as far as human care and foresight can secure that result.
He is bound for a due application, on the part of his servants, of the necessary attention, art and skill.
In Stokes v. Saltenstall, (13 Peters (U. S.) R. 181-191,) the court stated, as a sound principle, that, although a carrier of passengers “ does not warrant the safety of the passengers, at all events, yet his undertaking and liability to them, go to this extent: that he, or his agent, if, as in this case, he acts by agent, shall possess competent skill; and that, as far as human care and foresight can go, he will transport them safely.”
If he is under an obligation, or duty, that his agent shall employ the highest degree of care and foresight, for the safe conveyance of the passengers, is not the failure to discharge the obligation, or perform the duty, as absolute, when it results from intentional mismanagement, as when it is caused by slight or gross inattention of the agent ?
The case of the Phila. and Reading Railroad Co. v. Derby, decides, that the carrier is not exonerated from liability, merely because the agent acted in disobedience of the positive orders of the principal. In that case, the defendant requested the Judge, at the trial, to charge the jury: “that the employer is not responsible for the wilful act of his servant.” (Id. 470.) The Judge charged, “ that, though the master is not liable for the wilful act of his servant, not done in the course of his employment as servant, yet, if the servant disobeys an order relating to his business, and injury results from that disobedience, the master is hable, for it is his duty to select servants who will obey. The disobedience, in this case, is the ipsa negligentia, for it is not pretended by the defendants that the Lycoming was intentionally driven against the Ariel.”
The latter remark may be thought to imply an opinion, that if the disobedient servant intentionally drove his locomotive against the one by which the defendant was drawn, the defendant would *198 not be liable to any passenger on either train, for the iryuri.es which might result to him from such an act.
As to this, it is sufficient to say, that the Judge did not declare such to be the rule, nor does the opinion of the court sanction it.
Passengers are not unfrequently injured by the improper position in which a switch is left, or by a train being started forward on a single track, when a train is overdue from the opposite direction. Do the rights of injured passengers, in such cases, depend upon the question, whether the switch was left out of place, or the train started prematurely, in consequence of the mere inattention of the agent of the company ?
Is it settled law, that if the act resulted from negligence, the carrier is liable, but is not liable if the act was one of intentional dereliction from duty, and done with knowledge that the passengers were thereby exposed to new and great hazards ?
If wilful misconduct of the agent of a passenger carrier, in the mode of transacting the business of the principal, will exonerate the latter from all liability to the passengers for the injuries they may receive from such miscoduct, then what is the true limitation of the rule ?
If, in this case, the act of wilful misconduct, resulted from feelings of hostility to one of the two lines of steamers running between Aspinwall and New York, and if done to diminish its chances of obtaining the carrying to New York any of the passengers in that train, would the defendant be absolved from liability ?
If the motive, which produced the act, was devoid of ill-will towards the passengers, and contemplated no injury to them, beyond the mere inconvenience of being in the cars all night, while the conductor was comfortably lodged at Obispo, and in order that he might be so lodged, is the defendant exempt from liability?
If the motive was ill-will towards the passengers, and the act was done from a deliberate and perverse purpose, to expose them, to the danger of contracting disease, either from such exposure in a rainy night, or from the unhealthiness of the spot in which the cars were left, is the defendant without liability for the act? And must the motive be such as last supposed; that is, ill-will towards, or a purpose to hazard the safety of the passengers, in order to exonerate the defendant from all liability for the acts of its agents ?
*199 It would be in the highest degree, detrimental to the public safety, to establish the rule, that passenger carriers are not liable for injuries caused to their passengers, by the deliberate and intentional misconduct of the carrier’s agent, in the mode of conducting the business of the principal.
Every known disobedience of a general regulation, or special order of a railroad company, may properly be denominated wilful misconduct. In most cases, the agent so disobeying, is conscious at the time, that he is exposing the passengers to greater, and often, to imminent hazards.
In such cases, the carrier has failed to perform the duty of doing all that human care and foresight could do for the safety of the passengers. By a statute of this state, a carrier of passengers, who conveys passengers upon any turnpike road or public highway, is liable to the party injured, in all cases, for all injuries and damages done by any person in his employment, while driving the carriage of the carrier, whether the act be wilful or negligent, or otherwise, in the same manner as such driver would be liable. (1 R. S. 696, sections 6 and 7.)
This act, by its terms, relates only to carriers of passengers, upon turnpike roads or the public highway. Its existence, however, illustrates the rule, which public policy, in the view of it entertained by this state, requires should be enforced. That act makes the passenger carrier, to whom it relates, liable, not only to his passengers, but to all others, for any injury of the agent, while driving the carriage of his principal, and as well when his misconduct is wilful, as when it is merely negligent. These defendants were incorporated by the legislature of this state.
There is nothing, in any adjudged case, nor in the nature and extent of the duty which the carrier owes to his passengers, nor in the principles of public policy, acted upon in this state, sanctioning the principle, that a railroad company is not liable to its passengers for the wilful misconduct of its agent, in his mode of running the cars confided to his care and control.
A carrier of merchandise is responsible for any injury to it, caused by the wilful trespass of his servants, during its transportation.
Can any reason be assigned, why the liability of a passenger carrier should not be the same, in respect to any injury to the *200 person of the passenger, caused by the servant of the carrier, in the course of his employment as such, or while the passengers are subjected to his care and direction, for the purpose of being conveyed to their destination ?
Passengers being sentient beings, capable of, and at times, determined upon locomotion, while the cars are running, them own negligence or rash conduct, in some instances, may contribute as much to a casualty which injures them, as the negligence of the carrier or of his agents.
But when a passenger, in the course of Ms passage, is injured solely by the act of a servant, to whose care and control the passengers, and the cars containing them, are confided, and under circumstances making it impossible, by the exercise of any discretion on the part of the passengers, either to prevent the wrongful act, or to mitigate its injurious consequences, why should the carrier be exonerated, on the ground of the wilful or malevolent purpose of his agent, when Ms liability would be unquestionable, if the injury had been to property, instead of persons ?
But it is not necessary to apply so stringent a rule of liability, to entitle the plaintiffs to a judgment on the verdict.
I d.o not think, that the form of the verdict necessarily affirms, that the conductor stopped and left the train where, and as he did, from a design to injure the passengers, or believing that either of them would contract any disease in consequence of it. No such position appears to have been taken at the trial, and, therefore, no such fact is necessarily affirmed by the verdict. It was insisted at the trial, that the conductor designedly left the train at the Barbacoas switch, having that intention when he left Obispo.
The verdict undoubtedly finds, that the act did not result from mere misjudgment, or negligence in not informing himself as to the condition of the road, and that the train could be safely passed over it that night.
It does not necessarily affirm more, than that he deliberately disobeyed the orders of the company, or consciously and perversely disregarded Ms duty, for the mere purpose of consulting his own ease and comfort for the night, regardless of that of the passengers.
We do not think, that any consideration of public policy, or the proper application of any well settled rule of law, justifies us in *201 holding, that the defendant is not liable to a passenger for the injuries caused by such misconduct.
The only question left, relates to the damages. What rule of damages was given by the court to the jury is not disclosed by the case. Whatever it was, no exception appears to have been taken to it. The plaintiffs’ counsel insisted that exemplary damages might be given, if the conductor wilfully misconducted himself in leaving the train at the Barbacoas switch. The defendants’ counsel insisted that there was no liability on the part of the corporation, if that fact should be found by the jury. There is nothing in the case from which it can be inferred that the court instructed the jury, that in their discretion they might find exemplary damages, in case they also found the fact of wilful misconduct, but could not, if they found his conduct to be merely negligent.
There is, therefore, not only no exception to any ruling of the Judge at the trial, in respect to this matter, but there is nothing to show what instruction was given. The only inference that can be drawn is, either that the Judge told the jury, that whether they found the act to be one of negligence, or of wilful misconduct, the rule of damages was the same, and that no heavier damages could be given in the latter case than in the former, or that he submitted the special questions with such remarks as were satisfactory to the defendants’ counsel, or that the jury were left, by common consent, to assess the damages at such amount as they might deem to be just.
A new trial cannot be granted, therefore, on account of any erroneous instruction to the jury, in relation to the damages. We are not asked to grant it on account of excessiveness of damages. No point was taken at the trial, or on the argument of the appeal, that damages were asked, or have been given, for any cause besides the injuries to, and sufferings of, Mrs. Weed.
Judgment should be entered for the plaintiffs on the verdict.