JOHN A. BOSS *vs.* THE PROVIDENCE & WORCESTER RAILROAD COMPANY.

The verdict of a jury will not be set aside when the question of fact is not free from doubt, or when more than one conclusion can be drawn from the facts by reasonable men ; and it is quite immaterial that the court might have come to a different conclusion from that drawn by the jury, or that another jury might on the same evidence find a different verdict.

The train on which A. was approaching his home stopped before arriving at the station, to allow a freight train coming in the opposite direction to pass the station. It was dark. A., thinking that the station was reached, got out and was injured by the freight train. The conductor, as soon as he learned the cause of the stop, moved his train forward to the station. It was in evidence that passengers at the station habitually left the train on both sides. A. sued the railroad company for his damages and recovered a verdict.

*Held,* that the questions of the defendant's negligence and of the plaintiff's contributory negligence were for the jury to decide under proper instructions from the court, which in the case at bar were presumably given.

DEFENDANT'S petition for a new trial. The facts are stated in the opinion of the court.

*Edwin Metcalf, Nicholas Van Slyck,* and *Stephen O. Edwards,* for petitioning defendant.

There is no evidence of negligence on the part of the defendant corporation or its employees. Both trains and the crossings were in the charge of the full complement of careful, competent, and experienced officials, and the trains were running on schedule time. The gates at the Dexter Street crossing were closed and were furnished with proper lights. The defendant corporation was not guilty of negligence in stopping the passenger train before it reached the station. The train was stopped in obedience to a signal given by the gateman stationed at the Broad Street crossing at the south end of the Pawtucket depot, and the gateman in so doing was acting in strict compliance with the rules and regulations of the road and the instructions of the superintendent. The regulation requiring the stopping of the train was made to avoid accident, and to insure greater safety on the part of passengers. It requires that two trains shall not meet at a station, and, to avoid this, the freight train having first signalled the gateman of its approach, he signalled the passenger train to stop, in order to allow the freight train to pass the station. *Bridges* v. *The North London Railway Co.* L. R. 6 Q. B. 377.

The accident was the direct result of gross carelessness on the part of the plaintiff. By exercising the ordinary care of a prudent man, the plaintiff might have discovered that the station had not been reached. The plaintiff was intimately acquainted with the surroundings at the crossing and at the station. The night was clear, and the most casual observation would have revealed to him his error, if he had for a moment supposed that he was at the station. His fellow-passengers, of whom there were many on the train, were only momentarily deceived. The evidence does not show that one of them left the train. The plaintiff alone was so reckless as to step off of the train without stopping to see where he was, and the accident was due to his failure to take this reasonable precaution. *Pennsylvania R. R. Co.* v. *Zebe,* 33 Pa. St. 318; *Gonzales* v. *New York & Harlem R. R. Co.* 38 N. Y. 440; *Chicago, Rock Island & P. R. R. Co.* v. *Dingman,* 1 Bradwell Ill.

App. 162 ; *Wheelwright* v. *Boston & Albany R. R. Co.* 135 Mass. 225 ; *Bancroft* v. *Boston & Worcester R. R. Co.* 97 Mass. 275. " A railroad company is not liable to a passenger for an accident which the passenger might have prevented by ordinary attention to his own safety, even though the agents in charge of the train are also remiss in their duty." Black, C. J., in *Railroad Co.* v. *Aspell*, 23 Pa. St. 147.

In an action for negligence, it is incumbent upon the plaintiff to show affirmatively that the negligence of the defendant was the sole cause of the injury complained of. *Detroit & Milwaukee R. R. Co.* v. *Van Steinburg*, 17 Mich. 99, 119 ; *Hart* v. *Hudson River Bridge Co.* 80 N. Y. 622.

*Oscar Lapham & Simon S. Lapham*, for plaintiff.

*July* 25, 1885. TILLINGHAST, J. This is a petition for a new trial, on the grounds that the verdict is against the evidence and the weight thereof, and that the damages found by the jury are excessive. The main facts in the case are not in dispute, and are substantially as follows, viz. : The plaintiff, who resides at Pawtucket, was a passenger on defendant's road from Providence to Pawtucket on the night of January 2, 1883, leaving Providence in the 6.10 P. M. train, which was due at Pawtucket at 6.22 P. M. The train, which consisted of five cars, ran on the west track going out, and as it approached the Dexter Street crossing, which is about six hundred feet south of the Pawtucket station, which is on the west side of the track, it was signalled to stop by a crossing tender of the road, and did stop. When it came to a stand still, the engine and one car had passed over said Dexter Street crossing, the remainder of the train being over and immediately to the south thereof. A freight train on the east track was about to pass the Pawtucket station going south, and the signal to the passenger train to stop was given to prevent the latter from reaching the station at the time when said freight train was passing the same, and to avoid the consequent liability to accident on the part of the passengers. No notice was given in the smoking-car that the train had not arrived at the station. Directly upon the stopping of the train, the plaintiff, who occupied a seat near to the forward door of this car, which was next the engine, went to the front platform, and, having alighted, attempted to cross the east track of said road,

going in the direction of his home.   In the act of crossing he was struck by the engine of said freight train, knocked down, his right leg so badly injured that it had to be amputated just below the knee, and other injuries inflicted.   The cars were well filled with passengers at the time of the accident, quite a number of whom were for Pawtucket; and when the train stopped as aforesaid, many of them, supposing that they had arrived at the station, arose from their seats and started to leave the cars.   The plaintiff testified upon this point as follows : —

" There are two tracks laid side by side.   George Brown was with me. . . . Finally the train stopped, and I thought we had got to the depot.   Judging by the time, I thought it was just about time to get to the Pawtucket depot.   I never thought anything about Dexter Street, for I had never stopped there before.   I thought I was at the depot, and felt perfectly safe in getting out. . . . That is the side I always got off at. . . . I got out the same as I always had at the depot.   It was dark, and I could not see what there was in front of me.   It is just the common distance between the two tracks."

It was and long had been the custom for passengers to board and leave trains at the Pawtucket station, on either side thereof, without caution or restriction from the officers or servants of the road; and passengers alighting from a train at said station, on the east side of the train going north, would necessarily descend upon the ground, there being no platform between the tracks, and would cross the east track, which is the one used by inward Providence bound trains.   There were platforms on each side of the double track at the station, the one on the east side, however, being very short and used mainly in the handling of baggage, but it frequently happened that they were not of sufficient length to accommodate the entire trains stopping there ; in which cases passengers in the extreme front and rear cars, descending upon either side thereof, would frequently alight upon the ground.   The train in which plaintiff was a passenger was on time, and it had never before stopped, so far as the employees of the defendant knew, at said Dexter Street crossing.   One of the printed rules of the road provided that "When a passenger and freight train approach a station at the same time, the freight train must always be stopped be-

fore reaching it, and wait for the passenger train, and no switching will be done until it has passed." Said rules took effect January 1, 1879. But since then the road has been provided with electric signals; and to meet this new condition of things the superintendent has from time to time supplemented and varied these rules and regulations by personal instructions given to the employees of the company. At the time of the accident both trains and the crossings were in charge of the usual number of careful, competent, and experienced officials, and the gates at said Dexter Street crossing were closed, and furnished with the lights ordinarily used at such places. The conductor of the passenger train had no warning of the intended stop, or the cause thereof. He proceeded promptly to ascertain the cause, and, having done so, caused his train to move forward slowly to the station. The stop at said crossing was but momentary. The engine on the freight train carried a head-light which lighted the track in front for a considerable distance. There was a curve in the road, however, at and near to said Dexter Street crossing, which prevented said head-light, to some extent, from lighting the track where the accident occurred. Said freight train was running at the rate of about fifteen miles per hour; and both the engineer and fireman thereon saw the plaintiff on the track before he was struck, but it was impossible then to stop the train or lessen its speed before it struck him.

The plaintiff was well acquainted with the surroundings at said crossing and at the station, having been on the police force of the town for several years, and had frequently been a passenger on defendant's road between Providence and Pawtucket. There is some conflict of testimony as to whether it was cloudy and foggy at the time of the accident; but it was dark, and there was no moon. The witness, Sewell Read, testified upon this point as follows: —

" It was a very dark night, that is, it was misty. It is just as dark when you get opposite the depot as it is there, at the place of the accident. . . . Going on the opposite side from the depot, you are going into total darkness. There is a light on Exchange Street, clear at the corner of the bridge, but you could not tell by that, I should think."

The jury found for the plaintiff, and assessed the damages at $6,000. The defendant contends, *first*, that upon this state of facts there is no evidence of negligence on its part; and *second*, that there is evidence of gross carelessness on the part of the plaintiff.

In regard to the degree of care which the law imposes upon common carriers of passengers, it is settled, by a long and uninterrupted line of adjudications, that they are bound to exercise the utmost care and skill which prudent men would use under similar circumstances; and that they are liable for injuries resulting from even the slightest negligence on the part of themselves or their servants. *Weed* v. *Panama Railroad Co.* 5 Duer, 193; *Maverick* v. *Eighth Avenue R. R. Co.* 36 N. Y. 378; *Caldwell* v. *Murphy*, 1 Duer, 233; *Edwards* v. *Lord*, 49 Me. 279; *Sales* v. *The Western Stage Co.* 4 Iowa, 547; *Derwort et ux.* v. *Loomer*, 21 Conn. 245; *Simmons* v. *New Bedford, Vineyard & Nantucket Steamboat Co.* 97 Mass. 361; *McElroy* v. *Nashua & Lowell Railroad Corp.* 4 Cush. 400; *Ingalls* v. *Bills et als.* 9 Met. 1, and cases there cited; *Stokes* v. *Saltonstall*, 13 Pet. 181, 191; *Bowen* v. *New York Central Railroad Co.* 18 N. Y. 408; *Thayer* v. *St. Louis, Alton & Terre Haute R. R. Co.* 22 Ind. 26; *Chicago, Burlington & Quincy Railroad Co.* v. *George*, 19 Ill. 510; *Virginia Central R. R. Co.* v. *Sanger*, 15 Gratt. 230; *N. & C. Railroad Co.* v. *Messino*, 1 Sneed, 220.

It is also equally well settled that the question as to whether or not the defendant in a given case is chargeable with negligence is ordinarily a question of fact to be determined by the jury, under proper instructions from the court as to what constitutes negligence. And the same is true with regard to contributory negligence on the part of the plaintiff. And although there are cases in which, the facts being undisputed, and being decisive of the case, it becomes the duty of the court to decide as matter of law upon the question of negligence, yet it is only in those cases where the question of fact is entirely free from doubt, and where only one conclusion can be fairly arrived at therefrom, that the court has the right to thus apply the law without the action of the jury. In the language of the court in *Hart* v. *Hudson River Bridge Co.* 80 N. Y. 622, cited on defendant's brief: " When, from the circum-

stances shown, inferences are to be drawn which are not certain
and incontrovertible, and may be differently made by different
minds, it is for the jury to make them; that is to say, when the
process is to be had at a trial of ascertaining whether one fact had
being from the existence of another fact, it is for the jury to go
through with that process." Or, as is tersely said by Cooley, C.
J., in *Detroit & Milwaukee R. R.* v. *Van Steinburg*, 17 Mich. 99,
122, also cited by defendant : " When the question arises upon a
state of facts on which reasonable men may fairly arrive at dif-
ferent conclusions, the fact of negligence cannot be determined
until one or other of these conclusions has been drawn by the
jury. The inferences to be drawn from the evidence must either
be certain and incontrovertible, or they cannot be decided upon
by the court. Negligence cannot be conclusively established by
a state of facts upon which fair-minded men may well differ."
See, also, *Bernhardt* v. *Rensselaer & Saratoga Railroad Co.* 32
Barb. S. C. 165 ; Shearman & Redfield on Negligence, § 11, and
notes ; *Keller* v. *The New York Central R. R. Co.* 2 Abb. Ct.
App. Decis. 480 ; *Ireland* v. *Oswego, Hannibal & Sterling Plank
Road Co.* 13 N. Y. 526, 533 ; Wells on Questions of Law and
Fact, § 265, and authorities cited.

The case at bar, in our judgment, is not one in which the court,
sitting with a jury, could pass upon the question of negligence as
matter of law. For, while the main facts therein are not in dis-
pute, yet the inferences and deductions to be drawn therefrom are
not so manifest and apparent as to warrant the court in declaring
them. They were, therefore, properly left to the jury, and, we
are bound to presume, under as favorable a construction of the law
as the defendant was entitled to. For, represented as it was at the
jury trial by able and diligent counsel, it made no objection that
the law applicable to the facts in proof was not fully and clearly
stated. The jury found for the plaintiff, and the only question
now is, whether that finding was clearly, palpably, and decidedly
against the evidence and the weight thereof, or, in other words,
whether the evidence *very strongly* preponderates against the
verdict. *Johnson* v. *Blanchard*, 5 R. I. 24, 25. If so, the court
should set it aside ; but if not so, it should not be disturbed.
Upon a careful study of all the evidence and the law applicable

thereto, we are unable to say that there is a very strong preponderance of evidence against the verdict. There were many facts and circumstances connected with the case which it was the peculiar province of the jury to weigh and consider, and from which it was their prerogative to draw such inferences as in their good judgment they might legitimately and fairly draw. For instance, we think that the question as to whether the defendant was guilty of negligence in stopping the train so near to the station in the night-time, without notifying the passengers in this car that they had not reached it, considering the imminency of the approaching freight train, was one which the jury might properly consider and pass upon. *Pennsylvania Company* v. *Hoagland et ux.* 78 Ind. 203 ; *Lewis* v. *Eastern Railroad*, 60 N. H. 187 ; *Robinson* v. *The N. Y. Central & Hudson River R. R. Co.* 20 Blatch. 338. And as different minds would doubtless arrive at different conclusions, and that, too, with entire honesty and fairness, upon the evidence as to that question, it would be simply substituting the court for the jury if *it* should say that they were not warranted in finding that there was negligence on the part of the defendant from this one fact. And the same is true with regard to several other facts which appeared in evidence, namely, allowing the freight train to pass the station when the passenger train was due, thereby necessitating the stoppage of the latter so near to the station, with knowledge on the part of the defendant that passengers were in the habit of leaving the train on both sides thereof the moment it arrived at the station ; and that, when the trains were long, as frequently was the case, passengers in the smoking-car would be obliged to alight upon the ground for want of sufficient length of platform, and this, too, where there were no lights. These facts, together with others of more or less importance, were before the jury for consideration under the instruction of the court as to the law applicable thereto, and they arrived at the conclusion that the defendant was guilty of negligence. And it is quite immaterial that the court, if originally acting as the triers of this question of fact, might have come to a different conclusion. It is immaterial, even, that another jury might arrive at a different conclusion upon the same proof, so long as no claim is made that the jury that tried the case was actuated by improper

motives, or was not a fit and proper jury in every respect to try the same.

As to the claim made by defendant that the accident resulted from the plaintiff's carelessness, it seems to us that the only reply which the court need make is, that, while unquestionably there was evidence tending to prove this, yet it was for the jury to say whether it was proved as matter of fact under the law as given by the court; in other words, that the evidence of carelessness on his part is not so conclusive and free from doubt as to warrant the court in deciding as a matter of law that he was guilty of contributory negligence, or that the finding of the jury upon that question was against the strong preponderance of the evidence.   In *Hoyt* v. *The City of Hudson,* 41 Wisc. 105, it was held that, if the plaintiff's evidence merely tends to show negligence on his part, it is for the jury to say whether it existed.  See, also, *Manufacturing Co.* v. *Morrissey,* 40 Ohio St. 151 ; *Fassett* v. *Roxbury,* 55 Vt. 552, 555 ; *Longenecker* v. *Pennsylvania R. R. Co.* 105 Pa. St. 328 ; *Dahlberg* v. *Minneapolis Street Railway Co.* 32 Minn. 404 ; *Scott* v. *D. & W. Railway,* 11 Irish C. Law, 377 ; *Beisiegel* v. *New York Central Railroad,* 34 N. Y. 622 ; *Bowers* v. *Union Pacific R. R. Co.* 20 Reporter, 58, issue of July 15, 1885 ; *Hoye* v. *Chicago & N. W. R. R. Co.* Ib. 62.   Several of the cases cited by the defendant as bearing upon the question of the plaintiff's carelessness, namely, *Ormsbee* v. *Boston & Providence Corp.* 14 R. I. 102 ; *Wheelwright* v. *Boston & Albany Railroad,* 135 Mass. 225 ; *Studley* v. *London & Northwestern Railway Co.* L. R. 1 Exch. 13 ; *Ernst* v. *Hudson River Railroad Co.* 36 How. Pr. 84, and Wharton on Negligence, § 384, are cases in which the persons injured were not passengers on the trains from which they received the injury, but simply travellers in the act of crossing or walking upon the railroad track.   But, as a very different rule of responsibility obtains where an accident occurs during the existence of the relation of passengers and common carriers from that which obtains under the former circumstances, we do not think that these cases have much bearing upon the one under consideration.   The case of *Bridges* v. *North London Railway Co.* L. R. 6 Q. B. 377, cited on defendant's brief, would seem greatly to strengthen their position ; but, as this case was subse-

quently reversed by the House of Lords (see *Bridges* v. *The Directors, &c. of North London Railway Co.* L. R. 7 H. L. 213), it is not an authority.

Mr. Justice Brett, one of the judges summoned by the House of Lords to give an opinion in the case, said, among other things: "What men of ordinary care and skill would or would not do under certain circumstances, is matter of experience, and so of fact, which a jury only ought to determine. It seems to me that it will aid the consideration of what is the proposition or rule of law which is to govern the determination of a judge whether there is or is not evidence fit to be left to a jury, to consider what duty with regard to facts is cast upon the judge after the jury has found a verdict. He must undoubtedly determine whether the verdict is against the weight of the evidence. Here, again, I think that a definite rule of conduct, or, in other words, a definite proposition for legal application, which is, I think, a proposition of law, to be applied to the facts in evidence, should be laid down. That proposition cannot be whether the judge agrees in opinion with the jury. If so, the judge has left to the jury evidence which he has already decided to be such as it is not unreasonable to act upon, and yet, when it is acted on, he overrules it. I do not speak here of the cases in which a judge may, for precaution's sake, leave matter to the jury, reserving for more careful consideration by the court the question whether there was evidence fit to be left to the jury. The proposition or rule of conduct, to be applied to the consideration of the verdict, seems to me to be identical with that to be applied to the evidence before leaving the case to the jury. It is, again, not whether the judge would have decided in the same way, but whether the verdict is such as reasonable and fair men might not unfairly arrive at, or, in other words, whether the decision is such as would be clearly wrong in the judgment of the great majority of ordinarily reasonable and fair men."

The following named cases cited by the defendant, namely, *Pennsylvania Railroad Co.* v. *Zebe et ux.* 33 Pa. St. 318; *Gonzales* v. *New York & Harlem Railroad Co.* 38 N. Y. 440; *Chicago, R. I. & P. R. R. Co.* v. *Dingman,* 1 Bradwell Ill. App. 162; *Bancroft* v. *Boston & Worcester R. R. Co.* 97 Mass. 275, in so far

as the facts were similar to those in the case at bar, are analogous, and seem to support the position taken by the defendant. But as the facts and circumstances in cases of this sort are so well nigh infinite in their variety, and as each case must depend almost entirely upon the facts which appear in connection therewith, authorities, however pertinent, are useful mainly only in so far as they settle general propositions of law, and assist the court in applying these propositions to the particular facts of the case before it. While, therefore, not assuming to say that the law, as applicable to the facts in said cases respectively, was not correctly enunciated, still we are not prepared to say that the law is so applicable to the facts in the case at bar as to control in the decision thereof.

The second ground upon which the defendant asks for a new trial is, that the damages found by the jury are excessive. This ground was not urged, however, at the hearing; and, even if it had been, we do not think the court could properly say that under the evidence as to the extent and permanency of the injury the jury was influenced by passion, partiality, or prejudice in assessing the damages, or that the amount is so manifestly excessive and unreasonable as to warrant the interference of the court. See Sedgwick on Measure of Damages, 6th ed. 762–764 and notes; Hilliard on New Trials, 2d ed. 562–564, §§ 2, 3, 3 *a*, and notes. The petition for a new trial must be dismissed.

*Petition dismissed.*