**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PATRICK G. GRIFFIN, III, an
individual,

        *Plaintiff-Appellee,*

    v.

DEPARTMENT OF VETERANS AFFAIRS, a
Department of the United States
Government; ROGER R. RAPP, Acting
Under Secretary for Memorial
Affairs and Head of the National
Cemetery Administration; ROBIN
POHLMAN, Director, Point Lookout
Confederate Cemetery, an
individual, in her official capacity,

        *Defendants-Appellants.*

No. 01-1450

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-00-2837-WMN)

Argued: October 30, 2001

Decided: December 17, 2001

Before WILKINS, LUTTIG, and GREGORY, Circuit Judges.

---

Reversed by published opinion. Judge Luttig wrote the opinion, in
which Judge Wilkins and Judge Gregory joined.

---

## COUNSEL

**ARGUED:** John Samuel Koppel, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants. Michael F. Wright, CASE, KNOWLSON, JORDAN & WRIGHT, Los Angeles, California, for Appellee. **ON BRIEF:** Stuart E. Schiffer, Acting Assistant Attorney General, Stephen M. Schenning, United States Attorney, Mark B. Stern, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants. Steven D. Campen, Stephen S. Burgoon, CAMPEN & BURGOON, Frederick, Maryland, for Appellee.

---

## OPINION

LUTTIG, Circuit Judge:

Patrick Griffin brought suit in federal district court to compel the Veterans Administration to permit him to fly the Confederate flag daily over Point Lookout Confederate Cemetery, a national cemetery administered by the Veterans Administration through the National Cemetery Administration. The district court concluded that Griffin's proposed flag display constituted private speech in a nonpublic forum, and held that the Veterans Administration's asserted reasons for excluding this speech were neither reasonable nor viewpoint neutral. Accordingly, the district court enjoined the Veterans Administration to permit Griffin to fly the Confederate flag at Point Lookout daily, on a flag pole to be erected and maintained by Griffin. Because we hold that the Veterans Administration's denial of Griffin's request is both reasonable and viewpoint neutral, we reverse.

## I.

The National Cemetery Administration ("NCA"), part of the Veterans Administration ("VA"), operates 119 national cemeteries, including Point Lookout Confederate Cemetery, which the federal government acquired from the state of Maryland in 1910. Congress requires that all national cemeteries "shall be considered national

shrines as a tribute to our gallant dead," 38 U.S.C. § 2403(c), and has delegated to the Secretary of Veterans Affairs authority to make "all rules and regulations which are necessary or appropriate to carry out" this mandate, 38 U.S.C. § 2404(a).

A VA regulation, 38 C.F.R. § 1.218(a), broadly proscribes many forms of expression, absent specific authorization, on all VA property. It prohibits all "demonstration[s], except as authorized by the head of the facility." This includes the "display of any placards, banners, or foreign flags," and also "partisan activities." *Id*. The VA supplemented this general regulation with several more specific directives related to flag displays at national cemeteries. Of particular relevance to this case, the VA issued a formal directive, "Flags in VA National Cemeteries" ("Old Flag Manual"), in 1995. J.A. 165-72. A new directive ("New Flag Manual"), issued on April 30, 2001, after the district court decided the case now before us, superseded the Old Flag Manual.

Griffin requested permission to fly an historically accurate Confederate flag over Point Lookout on August 30, 2000, and daily thereafter. J.A. 95-96. The VA refused Griffin's requests, explaining that, although its rules (set forth in the Old Flag Manual) allowed for display of the Confederate flag two days a year, it did not "believe that additional displays of the Confederate flag at Point Lookout [were] in keeping with the NCA's mission." J.A. 97-98.

Dissatisfied, Griffin brought suit in district court, alleging that the VA's various flag restrictions were facially unconstitutional and unconstitutional as applied to his specific request. Griffin moved for a preliminary injunction, and the VA moved for summary judgment. *See Griffin* v. *Dep't of Veterans Affairs*, 129 F. Supp. 2d 832, 834 (D. Md. 2001). The district court proceeded directly to a trial on the merits, pursuant to Federal Rule of Civil Procedure 65. *Id*. at 837.

The court concluded that it lacked jurisdiction to hear Griffin's facial attack on 38 C.F.R. § 1.218(a)(14). *Griffin*, 129 F. Supp. 2d at 837 (citing 38 U.S.C. § 502, which allows for judicial review of VA rulemaking, but only in the Federal Circuit). It concluded, however, that it did have jurisdiction over Griffin's challenge to the regulation as applied to his request through the Old Flag Manual. *Id*. at 838.

The district court thereafter held that Point Lookout is a nonpublic forum, *id.* at 839, and that the VA's restrictions were neither reasonable in light of the purpose of the forum nor viewpoint neutral, *id.* at 841-44. Accordingly, the district court entered a permanent injunction, ordering the VA to permit Griffin to fly the Confederate flag daily, using his own equipment and labor. *Id.* at 839 n.9. This appeal followed.

## II.

The district court concluded, *Griffin*, 129 F. Supp. 2d at 840, and the parties agree, that Point Lookout is a nonpublic forum. Restrictions on speech in such a forum must be both reasonable in light of the purpose of the forum and viewpoint neutral. *See*, *e.g.*, *Cornelius* v. *NAACP Legal Def. & Ed. Fund, Inc.*, 473 U.S. 788, 806 (1985). As noted, the district court held that the VA's restrictions meet neither requirement. We address each in turn.[1]

## A.

In order to assess the reasonableness of the Secretary's restrictions, we must first determine the purpose of Point Lookout, the relevant forum. We agree with the VA that that purpose is to honor, as Americans, in tranquil and nonpartisan surroundings, those who have given

---

[1]Preliminarily, we note that the district court decided this case under the Old Flag Manual. The parties agree, as do we, however, that the appeal is not mooted by the adoption of the New Flag Manual. Griffin claims a constitutional right to his requested display. The New Flag Manual, like its predecessor, provides no mechanism by which Griffin could seek such blanket approval. And the fact that the VA persists in litigating this case confirms that it has no intention of acceding to Griffin's request. Moreover, Griffin's claim, at least before this court, is that 38 C.F.R. § 1.218(a)(14) is unconstitutional *as applied* to him through the Flag Manual, old or new. Because that regulation remains in effect and the VA continues to deny his request, the appeal is not moot. *See Northern Fla. Chapter of the Assoc. Gen. Contractors of Am.* v. *City of Jacksonville*, 508 U.S. 656, 662 (1993) ("There is no mere risk that [the VA] will repeat its allegedly wrongful conduct; it has already done so."); *cf. Valero Terrestrial Corp.* v. *Paige*, 211 F.3d 112 (4th Cir. 2000) (holding that *substantial* statutory revisions mooted case).

their lives to the Nation. We also conclude that the Secretary's restrictions are reasonable both as a means of ensuring the integrity of the VA's own message (which, in this case, coincides with the purpose) and, relatedly, as an effort to maintain the nature of the forum.

1.

The VA contends that the purpose of Point Lookout is to pay "tribute to [the Confederate soldiers] as citizens of the United States," Appellant's Reply Br. at 7. In confirmation of this purpose, the VA directs us to 38 U.S.C. § 2403(c), in which Congress provided that

> [a]ll national [cemeteries] shall be considered *national shrines* as a tribute to *our* gallant dead and, *notwithstanding the provision of any other law*, the Secretary is hereby authorized to permit appropriate officials to fly *the flag of the United States of America* at such cemeteries twenty-four hours each day.

(Emphasis added). Congress' evident concern that such cemeteries "shall be considered *national* shrines" and its focus on "*our* gallant dead," combined with its emphasis on the flying of the "flag of the *United States of America*," all but inexorably lead to the conclusion that Congress did, as the VA maintains, intend national cemeteries to be places in which we honor "our gallant dead" *as Americans*.

Further, to implement and effectuate this statutory mandate, the VA has promulgated various regulations designed to preserve these cemeteries as quiet places in which to honor the American dead, free from controversy and partisan conflict. *See*, *e.g.*, New Flag Manual (stating that "flags may not be displayed on NCA property as a means of political activity or similar conduct that promotes any particular viewpoint or ideology other than to commemorate military service"); 38 C.F.R. § 1.218(a)(14) (limiting most forms of expression on VA property).

Griffin, not surprisingly, argues that the purpose of Point Lookout is to honor the Confederates buried at the Cemetery *as Confederates* and that the district court made factual findings to that effect, which

we may review only for clear error. The district court did note that Point Lookout was "established for the sole purpose of honoring Confederate dead," *Griffin*, 129 F. Supp. 2d at 842, and went on to state that the proposed positioning of the Confederate flag "simply represents an unpretentious recognition that those who are buried there died as members of the Confederate Army," *id*.

Critically, however, nothing in the district court's opinion rejects or even refutes the VA's position that the purpose of Point Lookout is to honor those Confederate soldiers who are buried there *as Americans*. To say that the purpose is to honor the Confederate dead, as the district court did, is not at all to say that the purpose is not to honor them *as Americans*. That is, even if we assume that the district court's comments amount to findings of fact (and ignore the district's failure to comply with Federal Rule of Civil Procedure 52(a), which requires the court to "find the facts specially and state separately its conclusions of law thereon") we would still conclude, as the VA urges, that the purpose of Point Lookout is to honor, *as Americans*, those who are buried within that cemetery.

Stated another way, the district court's purported findings are simply irrelevant to the disposition of this case. As discussed below, the reasonableness of the VA's restrictions turns on whether the purpose of Point Lookout is to honor the Confederates as Confederates or as Americans. Griffin insists that it is the former, and the VA insists that it is the latter, but the district court's opinion is silent as to which it is. Because there is no factual finding by the district court on this pivotal distinction to which we must defer, and because the statute compels us to accept the VA's position, we hold that the purpose of Point Lookout is to honor the soldiers buried there *as Americans*.[2]

---

[2]Griffin attempts to support his position by noting that the VA has retained the original name, "Point Lookout Confederate Cemetery." Griffin also points to various inscriptions on Point Lookout's monuments, such as "At the call of Patriotism and duty they encountered the perils of the field, endured the trials of a Prison, and were faithful, even unto death," J.A. 157, and "Dulce et decorum est pro Patria Mori." We need not, however, decide whether the name of the Cemetery or its inscriptions could ever determine its purpose for First Amendment analysis, because each of these is consistent with honoring the Confederates buried at Point Lookout *as* Americans.

2.

Griffin asserts, and the district court held, that the VA's restrictions are unreasonable in light of the purpose of the forum. We note at the outset that the VA's restrictions "need only be *reasonable*; [they] need not be the most reasonable or the only reasonable limitation[s]." *Cornelius*, 473 U.S. at 808. We have no trouble concluding that the restrictions meet this deferential test.

The government is entitled to promote particular messages, *Rosenberger* v. *Rector and Visitors of the Univ. of Va.*, 515 U.S. 819, 833 (1995), and to "take legitimate and appropriate steps to ensure that its message[s] [are] neither garbled nor distorted," *id.*; *see Rust* v. *Sullivan*, 500 U.S. 173, 194-95 (1991) ("[W]hen the Government appropriates funds to establish a program [that includes speech] it is entitled to define the limits of that program.").

The district court missed the thrust of this argument, stating that the "[d]efendants are not being asked to expend their money or act at all but, rather, merely to 'step back and allow the third parties to use the government property without interference,'" *Griffin*, 129 F. Supp. 2d at 842 (quoting *PMG Int'l Div., LLC* v. *Cohen*, 57 F. Supp. 2d 916, 920 (N.D. Cal. 1999)). Requiring the VA to allow the Confederate flag to fly daily over Point Lookout certainly "garble[s] [and] distort[s]" the VA's chosen message that "Point Lookout does not commemorate fallen Confederates as such[, but, rather,] . . . pays tribute to them *as citizens of the United States* who died in service of the Confederacy during a national conflict." Appellant's Reply Br. at 7 (emphasis added).

The First Amendment does not compel the VA to subsidize Griffin's speech by allowing him to use the federally-owned Cemetery, particularly when that speech undermines the VA's own message. The VA "is not denying a benefit to anyone, but is instead simply insisting that public funds [in the form of use of land] be spent for the purposes for which they were authorized." *Rust*, 500 U.S. at 196.

Griffin next argues that, because the VA permits the Confederate flag to be flown two days a year, the purpose of the forum would best be fulfilled by flying the flag daily. Griffin actually states that in order

to avoid this conclusion, "the VA would have to show that diminishing returns set in after two days of display, thereby adding no additional honor and respect to the Confederate dead." Appellee's Br. at 34 & n.5. Even ignoring the fundamental mathematical error, this statement is simply incorrect. There is nothing unreasonable about the VA's decision to accommodate those, like Griffin, who wish to honor the soldiers as Confederates, only twice a year. And, in fact, the two days on which the VA automatically allows the flag to fly are Memorial Day and Confederate Memorial Day. It is not unreasonable to believe that limiting the display to those two days reinforces the VA's objective of honoring "our gallant dead," 38 U.S.C. § 2403(c), without unduly disturbing or distorting the VA's overall message of honoring the dead *as American citizens*.

Perhaps flying the Confederate flag does, as the district court believed, "affirm[ ] the statutory mandate that national cemeteries shall be 'shrines as a tribute to our gallant dead,'" *Griffin*, 129 F. Supp. at 841 (quoting 38 U.S.C. § 2403(c)), though, as expressed above, we doubt it. But Congress delegated this determination *not* to the district court or to Griffin, but, rather, to the Secretary. We hold that the Secretary's restrictions are reasonable in light of the purpose of Point Lookout.

3.

The district court also rejected the VA's argument that the restrictions were reasonable in light of the VA's desire to preserve the tranquility of national cemeteries. The district court noted that the Confederate flag had flown for several years at Point Lookout (until the VA became aware of it), apparently without incident. And although the district court was "hard put to imagine a rationally thinking person attributing a racial or discriminatory message" to the proposed display, *Griffin*, 129 F. Supp. 2d at 841, certainly the VA could reasonably believe that the Confederate flag *could* cause controversy and that such controversy *could* undermine the VA's goal of keeping the cemeteries free from partisan conflict. The First Amendment does not preclude the VA from taking steps to preserve the nature of this nonpublic forum. *See, e.g.*, *Perry Educ. Ass'n* v. *Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983) ("[T]he State, no less than a private owner of property, has power to preserve property under its

control for the use to which it is lawfully dedicated.") (quoting *United States Postal Serv.* v. *Greenburgh Civic Ass'n*, 453 U.S. 114, 129-30 (1981)); *id.* at 52 n.12 (noting that government need not prove disruptions will occur); *see also International Soc'y for Krishna Consciousness, Inc.* v. *Lee*, 505 U.S. 672, 685 (1992) (*ISKCON*).

The VA also points to the logical consequences of the district court's holding, worrying reasonably that other groups would demand that their own flags be flown over the Cemetery. The VA may also have to contend with counterspeech that the Confederate flag encourages. Griffin characterizes this concern as a "baseless scare tactic." Appellee's Br. at 48. But the Supreme Court has counseled that justifications for restrictions "should not be measured by the disorder that would result from granting an exemption solely to" one group. *ISKCON*, 505 U.S. at 685 (internal quotation omitted). Rather, the VA can legitimately consider the probable effects of demands made by other groups.

Griffin seeks to distinguish his speech from possible counter speech. The former, he insists, is compatible with the purpose of the forum, while the latter is not. But this is true only if the purpose of the forum is honoring the Confederate dead as Confederates, a view we have already rejected. Nor is it by any means clear that the First Amendment tolerates favoritism of the kind Griffin apparently advocates. *See, e.g., R.A.V.* v. *City of St. Paul*, 505 U.S. 377, 392 (1992) ("[The VA] has no such authority to license one side of the debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules.").

We conclude that the VA's restrictions are reasonable in light of the nature of this particular forum, a cemetery dedicated to honoring, as Americans, the Nation's war dead.

B.

The district court believed, as Griffin had argued, that the VA's persistent references to the Confederate flag as "a symbol of racial intolerance and divisiveness clearly demonstrate[d] that [the VA is] choosing, and advancing the viewpoint of those offended by the flag over the viewpoint of those proud of the flag." *Griffin*, 129 F. Supp.

2d at 843 (citations omitted). While it is not clear that the VA has done any such thing, as discussed above, the VA is allowed to choose sides as far as its own message is concerned.

The only issue is how the VA treats what little private speech it does allow at the Cemetery. The VA argues that the flag restrictions now in place limit private flag displays in national cemeteries without regard to the speaker's viewpoint. Griffin contends that the VA discriminates based on viewpoint, because it "allow[s] a group to display Confederate flags far less than other flags." Appellee's Br. at 51 (noting that viewpoint discrimination occurs "when government seeks to suppress speech because it disapproves of the message or ideas expressed") (citing *R.A.V.* v. *City of St. Paul*, 505 U.S. 377, 391 (1992)).

But a review of the New Flag Manual reveals that groups that wish to fly the Confederate flag actually enjoy an *advantage* over other groups. Such groups may fly the Confederate flag two days a year without seeking special permission. *See* New Flag Manual, at ¶ 7.a (included as exhibit to Appellee's Brief). Any further displays of the Confederate flag must be authorized pursuant to paragraph 2.b, but this merely places those wanting *additional* days on which to fly the Confederate flag in the same position as private parties seeking to display any other flag on a given day.[3] Far from demonstrating any special distaste for the Confederate flag, the New Flag Manual expresses, if anything, we suppose, a preference.

Griffin believes that *R.A.V.* supports his position. But this is not a case in which the government "impose[s] *special prohibitions* on those speakers who express views on disfavored subjects." *R.A.V.*, 505 U.S. at 391 (emphasis added). If anything, the VA grants groups

---

[3]Griffin makes much of the fact that the New Flag Manual does not affirmatively prohibit the display of other flags, like the POW/MIA flag, by private parties. This simply misses the structure of the rules laid out in the New Flag Manual. Paragraph 2.b requires that *any* deviation from the default rules must be approved by the appropriate authorities. Paragraph 8.b states that at cemeteries without permanent staffing, such as Point Lookout, the POW/MIA flag flies only on the six days required by statute.

that wish to fly the Confederate flag *special permission*. It confers a similar advantage on the advocates of no other flag, except the two flags specifically addressed by federal law (the flag of the United States and the POW/MIA flag). On this record, it is not possible to conclude that the VA discriminates against those who seek to display the Confederate flag or even that the VA is motivated by animosity toward that flag.

The district court erred by concluding that the VA discriminates against Griffin's message on the basis of viewpoint. The VA's restrictions are not only reasonable in light of the purpose of the forum, but also viewpoint neutral.

III.

Griffin contends, finally, that we should strike down the New Flag Manual as *facially* unconstitutional, because, among other reasons, it amounts to an unconstitutional prior restraint. But Griffin's facial attack faces several immediate obstacles. Arguably, it fails for the simple reason that the New Flag Manual is constitutional *as applied* to Griffin. *See Rust*, 500 U.S. at 183 (approving of the test announced in *United States* v. *Salerno*, 481 U.S. 738 (1987), even in the First Amendment context). *But see Grayned* v. *City of Rockford*, 408 U.S. 104, 114-15 (1972). Next, it is not completely clear that we have jurisdiction over the claim. It is quite possible that the New Flag Manual is an interpretive regulation under 5 U.S.C. § 553, judicial review of which "may be sought only in the United States Court of Appeals for the Federal Circuit." 38 U.S.C. § 502. Finally, the district court did not rule on this. Rather, it held that the *Old* Flag Manual was unconstitutional *as applied*. *Griffin*, 129 F. Supp. 2d at 844.

At any rate, Griffin's prior restraint claim is meritless. In support of this claim, Griffin musters up a cite to an Eleventh Circuit case, *Lady J. Lingerie, Inc.* v. *City of Jacksonville*, 176 F.3d 1358, 1362 (11th Cir. 1999), where the court stated that "statutes may not give public officials 'unbridled' discretion to deny permission to engage in constitutionally protected expression." But the precise form of expression in which Griffin wishes to engage — daily display of a Confederate flag in a nonpublic forum not open to such — is, by definition, *not* constitutionally protected expression. *See Greer* v. *Spock*, 424

U.S. 828, 838 (1976) (finding no First Amendment problem with vesting commanding officer of base with power to exclude civilians seeking to speak); *United States* v. *Kokinda*, 497 U.S. 720, 729 (1990) (plurality); *see also Arkansas Educ. Television Comm'n* v. *Forbes*, 523 U.S. 666, 682-83 (1998) (upholding exclusion of candidate from presidential debate, despite lack of procedural protections, because decision was reasonable and viewpoint neutral).

## *CONCLUSION*

For the reasons stated, the judgment of the district court is reversed and the case is remanded with instructions to vacate the injunction and enter judgment for the VA.

*REVERSED*