HENRY L. BANCROFT, administrator, *vs.* BOSTON & WORCESTER RAILROAD CORPORATION.

One who at a railroad station where there is a convenient place of egress to the highway from the platform on which he has alighted from a train, but which he does not observe, attempts to cross the double track of the railroad in order to reach another place of egress from the platform opposite, is not in exercise of due care if he steps down upon the first track at a time when the train by which he has arrived hides the tracks wholly from his view in the direction in which it is moving, and then crosses the intervening space and steps upon the second track at a time when this train moving slowly off, and a high bank wall, obstruct his view in that direction further than from eighty to a hundred feet; although the usual and much frequented way for passengers alighting as he did is to go directly across the two tracks to enter the highway through the place of egress which he is endeavoring to reach, and although at the point at which he alighted from the train there was nothing to indicate to him that there was any mode of egress otherwise.

TORT for injuries to the plaintiff's intestate, Francis H. Holman, while crossing the defendants' railroad track. At the new trial in the superior court, before *Lord*, J., after the decision reported 11 Allen, 34, the facts appeared substantially as follows:

On September 17, 1863, Holman, with his son, took passage in the defendants' cars from Worcester to Brighton, where they arrived just before nine o'clock in the morning and alighted on the platform adjoining the southern track of the railroad, over which track the train had come; this platform being that on which passengers usually and properly alighted from cars coming eastward. The stopping-place of the defendants' trains at Brighton was in a deep cut, between two high bank walls. There were two tracks; and the station-house, and, beyond it, a bridge which was traversed by a highway, stretched across the cut, from wall to wall, over the tracks. The place where Holman alighted was under the station-house, and was somewhat dark, being shaded by that and by the bridge and the two high walls. He walked from there a few feet along the platform, in the direction from which his train had come, to a point just outside the space over which the station-house extended; and it was from this point that he attempted to cross the tracks.

Just opposite to him, on the other side of the tracks, was a flight of steps in full view from this point. The usual and much

frequented way for passengers who left the cars on the side on which he stood was to go directly across the two tracks to those steps and ascend them to the highway, which, on that side of the railroad, was in full view from where he stood, as was also a railed passage way leading from the station-house to the end of the bridge, along which passengers who had come by his train could be seen passing; and this habit of the passengers was well known to the defendants. The last time Holman had come to Brighton as a passenger over the defendants' road, and for many years previous, the only mode of reaching the highway from the southern platform was by thus crossing the tracks to the northern platform; and, from the place where he on the present occasion alighted from the cars, there was no indication of any proper mode of egress except the appearance of the steps on the northern side, and the passage way and the highway beyond.

But behind Holman, on the southern side, where he alighted, there was also a flight of steps which went up apparently to a garden called Winship's Nursery, and then turned at right angles and ran to the highway; but neither the highway itself on that side nor the top of the steps were visible from any point to which he came in walking along the platform; and there was nothing to indicate to him that these steps were intended for the use of passengers, or that there was any highway or mode of reaching it on that side. And there was now also a flight of stairs provided for the use of passengers, leading from the southern platform to the station-house above, and a door opening upon them ; so that the actual means of egress from the two platforms were now precisely similar. But this door could not be seen from the point where Holman alighted, although he passed it with his back to it in walking upon the platform ; and he did not in fact see it, although it was visible from the point from which he attempted to cross the tracks. He also passed the flight of steps described as leading from the southern platform to Winship's Nursery and to the highway, but did not see them.

Both the platforms were only a single ordinary step above the

tracks. There was no plank walk between them; nor any unusual facility whatever for crossing. At some of the defendants' other stations between Worcester and Brighton there were large signs warning passengers to beware of approaching trains when crossing the tracks; but there were none such here.

When Holman reached the point upon the platform from which he attempted to cross, the train in which he had arrived was moving slowly towards Boston. He said to his son, "I believe this is the way," and stepped upon the track behind the rear car of the moving train, and began to cross. As he was upon the space between the two tracks he was able to see towards Boston, along the northern track upon which he was about to step, for a distance only of from eighty to a hundred feet, there being a curve in the road at that point, and the departing train, and the bank wall supporting the bridge, obstructing any further view in that direction; and at the time when he stepped down from the platform the train just starting hid the track towards Boston from his view. Proceeding at an ordinary pace, he then stepped upon the northern track, when an express train from Boston came around the curve at the rate of forty feet to the second, without sounding any bell or whistle or other warning of its approach. When he saw this train coming he threw up his hands and made an effort to reach the northern platform towards which he was going, but was struck by the engine before he could reach it.

The rules and regulations of the defendants were introduced in evidence, one of which was as follows: "Engine men are cautioned as to rapidly passing stations where passengers may be expected to be waiting for another train to stop, or where another train has stopped on the other track. Too great care can scarcely be taken to guard against mistakes being made by the passengers, particularly where the tracks have to be crossed and the view is not distant. Whistle and run slow."

Holman lived fifteen minutes after the blow, breathing, and opening and shutting his eyes; and then died. No evidence of consciousness other than may be inferred from these facts, was offered. He was forty-nine years of age, strong and in

good health before the accident; a farmer by occupation; **and** ordinarily a careful and prudent man.

Upon the foregoing facts the defendants (not admitting the same) asked the judge to direct a verdict in their favor. But he ruled that there was evidence to go to the jury upon the question of negligence on the part of the defendants and due care on the part of the plaintiff's intestate; but further ruled that the plaintiff could recover only nominal damages. Thereupon, by consent, a verdict was taken for the plaintiff for nominal damages, and the case was reported for determination by this court, with the agreement of the parties, that, if upon the evidence as offered, this court should be of opinion that due care was not exercised by the plaintiff, the verdict should be set aside and judgment entered for the defendants; that if the ruling upon all questions was right, judgment should be entered on the verdict; but if the ruling upon the question of damages only was wrong, then the verdict should be set aside and a new trial granted.

*G. F. Hoar & W. W. Rice,* for the plaintiff.

*G. S. Hale & F. P. Goulding,* for the defendants.

BIGELOW, C. J. Upon the uncontroverted evidence the court is of opinion that the plaintiff's intestate was not in the use of due care at the time of the accident which occasioned his death. The defendants had caused to be provided a sufficiently convenient and readily accessible place of egress from the platform on which the intestate stepped upon leaving the train. He could have reached the highway through the passage so provided without going on the track of the railroad. Instead of taking this course, he attempted to pass across the track unnecessarily, at a moment when he knew that the train which he had just left was slowly moving off so as to obstruct his view towards the point from which trains coming from the city approached the station. In consequence of this he did not see the express train, by which he was struck, in time to extricate himself seasonably to avoid collision with it. The track of a railroad, over which frequent trains are passing, is a place of danger. A person who goes upon it unnecessarily or without valid

cause, voluntarily incurs a risk for the consequences of which he cannot hold other persons responsible, certainly not without adequate proof that he took active measures of precaution to guard against accident.

According to the terms of the report, the verdict rendered for the plaintiff must be set aside and an entry made of

*Judgment for the defendants.*