MARTHA N. WHEELWRIGHT *vs.* BOSTON AND ALBANY RAIL-
ROAD COMPANY.

Suffolk.    March 14. — June 21, 1883.    DEVENS & W. ALLEN, JJ., absent.

At a railroad station, the tracks ran easterly and westerly.  On the south side of
the tracks were the station-house, and a platform over five hundred feet in
length, which ran, on the east, to a highway crossing the railroad at grade.  On
the north side of the tracks was a platform five hundred feet in length, which
ran, on the west, to a passageway leading from a highway parallel with the
railroad on its northerly side.  Between the two platforms were two strips of
planking, each ten feet wide, and the rest of the space was left unplanked.  The
railroad tracks were straight from the passageway for the distance of a quarter
of a mile in an easterly direction.  Passengers going eastward could only enter
the cars from the south platform.  A woman, who lived on the north side of the
railroad, intending to take a train going eastward, went, in the daytime, down
the passageway to the northerly platform, and found a freight train passing,
which was going westward.  She waited until it had passed, looked eastward to
see if any other train was coming, and saw none.  Her attention was then at-
tracted to the incoming of the train on which she was going, and knowing that,
by the rules of the road, while one train was at a station another was not allowed
to pass, and that one train was not allowed to follow another within five minutes,
she, without looking again to see if a train was coming, stepped on the north
track, attempted to cross at a place where there was no planking, and was struck
by a train coming from the east, a few hundred feet behind the other freight
train.  *Held*, in an action against the railroad corporation for the injuries sus-
tained, that there was no evidence to warrant a finding that the plaintiff was in
the exercise of due care, although, for nearly twenty years, persons coming
from the north side of the railroad had been accustomed to cross to the south
platform in the place where the plaintiff was attempting to cross.

TORT for personal injuries occasioned to the plaintiff by being
struck by a locomotive engine belonging to the defendant.    Trial
in the Superior Court, before *Mason*, J., who allowed a bill of
exceptions, in substance as follows :

The plaintiff introduced evidence tending to show the follow-
ing facts :

The defendant's railroad at Newton consists of two tracks, the
southern track being used for trains running toward Boston, and
the northern track for trains from Boston.  The station build-
ing, in which are the ticket-office, baggage-room, etc., is on the
south side of the road, and is one hundred and twenty feet long.
A platform extends along its front and eastwardly eighty feet to
the west side of Centre Street, a highway which crosses the rail-
road at grade, and westwardly three hundred and twenty-four

feet beyond the building, making in all a platform of five hundred and twenty-four feet.

On the north side of the railroad a platform extends from Centre Street westerly to the end of a narrow passageway leading from Washington Street, this platform being five hundred feet long, and its west end being sixty-eight feet east of the west end of the platform on the south side of the railroad. Opposite the station building, and on the north platform, is a shed for the shelter of waiting passengers, twenty-five feet wide and seventy-five feet long, the west end of which is two hundred and eighty feet east of the passageway. Between the shelter shed and the station building are two strips of planking, each ten feet wide and thirty-three feet from each other. The crossing of the railroad and Centre Street is planked. There is no planking across the tracks at any other place, but the tracks are left in the usual condition of railroad tracks, with nothing but rails and sleepers, and not filled up level with the sleepers, and with no preparation of the tracks to fit them for crossing by foot passengers. There was nothing to prevent people from crossing the tracks, except what is herein stated.

Passengers taking trains for stations east of Newton enter the cars from the south platform, and passengers leaving such trains get out upon the south platform. Gates are kept closed on the north side of the cars going toward Boston, so that passengers can neither get on nor off the cars on that side.

Passengers coming from Boston, or taking trains going west, leave or enter the cars by the north platform, and closed gates on the south side of such cars prevent people from leaving or entering such trains on the south side.

Both platforms were raised about a foot above the track. Washington Street runs nearly parallel with the railroad at the distance of about eight rods northerly from it, and connects with Centre Street, so that there is free access, for dwellers on Washington Street, to the station building and the south platform by the highway.

The plaintiff, a woman seventy-two years old, was the holder of a commutation ticket, entitling her to ride to and fro between Newton and Boston. On the day of her injury she started from her house, which was on the south side of Washington Street,

and immediately west of the passageway already referred to, for the purpose of taking, and in ample time to take, the twenty-three minutes past ten A. M. train for Boston. She passed from Washington Street into and through the passageway, which was narrow, and from which no view of trains coming from the east could be had. Two ladies were a short distance in front of her in the passageway. This passageway ends at a flight of three or four steps which lead to a landing connecting with the end of the north platform, which slopes gradually down to its level, which is about two feet below the general level of the platform. When the plaintiff reached the foot of the steps a freight train was passing westward on the north track, — a regular freight train, as she understood it, about twenty minutes late. She waited there about two minutes until the last car had passed, and then went up the steps, and, standing on the landing, looked eastward to see if any other train were coming. She was familiar with the defendant's time table, and knew when trains were due at Newton, and that no other train was due at that time, and that the rules of the defendant did not permit trains to follow within five minutes of each other. While looking eastward, she saw the ladies who had preceded her in the passageway walking along the north platform. She did not see any train approaching, nor hear any bell or any whistle. While she was looking, she was attracted by the incoming of the train which she was about to take ; and, knowing that the rules of the defendant did not permit a train to pass a station while another was passing it, and supposing that no train would approach from the east, she stepped, a moment after, upon the north track, and was struck by the engine of a freight train coming on that track from the east, a few hundred feet behind the other freight train, and received the injuries complained of..

The ladies who preceded her in the passageway saw the locomotive engine, which struck the plaintiff, coming, immediately on arriving at the top of the steps. They walked slowly, and the engine of the passenger train which was coming from the west, on the south track, passed them when they were less than a hundred feet east of the passageway, and the engine of the train which struck the plaintiff passed them going west, on the north track, before they were a hundred feet east of the passageway.

When they were about a hundred feet east of the passageway, the last-named engine whistled very sharply two or three times, whereupon they turned round and saw the plaintiff just upon the track. Other evidence, introduced by the plaintiff, tended to show that the engine which struck her whistled two or three times in quick succession before she was struck, and so sharply as to attract the attention of passengers in the passenger train, and before their car had met the engine which struck her; and that the engine which struck the plaintiff was drawing an extra freight train not on the time table.

Evidence introduced by the plaintiff further tended to show that the passageway through which she approached the railroad had been used by foot passengers for nearly twenty years, and that she and many others had been accustomed to use it; that the plaintiff and others, about to take trains for Boston, had been in the habit of stopping at the end of the passageway while their train was coming in, and then crossing the tracks and getting upon the rear car of the train, and that this was without objection from the defendant; that of those who came to the railroad premises through the passageway, some passed along the north platform easterly, some crossed the tracks opposite the passageway, and others crossed the tracks at various points between the passageway and the shelter shed; and that no objection had been made by the defendant to this practice.

The railroad track is straight, from a point west of the passageway, at least for a quarter of a mile east of the passageway; and if a person stands on the edge of the top step at the end of the passageway, without going toward the side next to the railroad track, the posts of the shelter shed would interfere with the view of a train approaching from Boston.

The plaintiff also introduced evidence tending to show that there was no flagman at the end of the passageway; and that no warning was given the plaintiff not to cross, other than appears from the foregoing evidence. The north platform, except under the shelter shed, is ten feet wide. There is nothing on it between the passageway and the shelter shed, except that a lamp, upheld by a bracket fastened to the fence at the back or north side of the platform, projects over it some two feet, at the height of seven or eight feet, at a point one hundred and eighty feet east

from the passageway.   The roof of the shelter shed is supported by posts, which stand five feet north of the south edge of the platform, and in the neighborhood of Centre Street some shops front on the platform, and do not project over or upon it. About two thousand people live north of the railroad and west of the passageway.

On this evidence, which was all the evidence on the question of the liability of the defendant, the judge, at the request of the defendant, ruled that the action could not be maintained ; and ordered a verdict for the defendant.   The plaintiff alleged exceptions.

*T. Weston, Jr.,* for the plaintiff.

*A. L. Soule,* for the defendant.

COLBURN, J.   In *Chaffee* v. *Boston & Lowell Railroad,* 104 Mass. 108, which was in some respects a similar case to the one ·at bar, the court say: " The plaintiff must show, by positive evidence, in cases of this description, that he was in the exercise of due care, and that his want of it did not contribute to the injury of which he complains.   If, as a matter of common knowledge and experience, the court can see that, upon all the undisputed facts, the plaintiff was not in the exercise of ordinary care, and that the injury he received was in part attributable to his want of it, the jury may be properly told, as matter of law, that he cannot recover."

In the case at bar, the plaintiff had ample opportunity to cross from the north to the south platform, either by the highway, or on the strips of planking designed for crossings, opposite the station building.   She was attempting to cross at a place not designed or adapted for crossing, at which the defendant had held out no invitation or inducement for her to cross.   The most that can be contended, on the evidence, is, that the defendant had tolerated a practice, which the plaintiff and others had adopted, of crossing where she was attempting to cross, without taking any active measures to prevent it.   This is far different from an inducement or invitation from the defendant to cross there.

In *Chaffee* v. *Boston & Lowell Railroad, ubi supra,* the court say: " A person who attempts to cross a railroad track, under any circumstances, can hardly be said to be in the exercise of

due care, unless he takes reasonable precaution to assure himself, by actual observation, that there are no approaching cars upon it. But the degree of caution he must exercise will be affected by the situation and surrounding circumstances." In that case, the plaintiff was injured by being struck by a hand-car, with no light upon it, running at the rate of ten or twelve miles an hour, as he stepped from the platform on to the track, in a dark night.

In the case at bar, the accident happened in broad daylight, between ten and eleven o'clock in the forenoon; the track was straight for a quarter of a mile easterly from the place where the plaintiff stepped upon it; and there was nothing to obstruct her view of the track for that distance, from any point on the platform within five feet of its southern edge. The conclusion is irresistible, that the plaintiff's attention was so far occupied, by the approach of the train she was to take, that she omitted to look along the track she was to cross, and stepped directly in front of the train which struck her. Her knowledge of the rules of the defendant, that trains should not pass each other at stations, or follow each other within five minutes, did not, under the facts in this case, excuse her from taking the simple and obvious precaution of looking to see what might be coming on the track she was stepping upon.

The fact that the plaintiff held a ticket, or that the train she was about to take had arrived, did not authorize her to cross the track at an improper place, or take any less care to see that she could cross in safety.

Being of opinion that the plaintiff was wanting in due care, which contributed to her injury, both in attempting to cross where she did and in not looking for an approaching train, we have no occasion to consider the question of the negligence of the defendant.                    *Exceptions overruled.*