CATHERINE ALLERTON, administratrix, *vs.* BOSTON AND
MAINE RAILROAD.

Suffolk.   January 12, 1888. — March 2, 1888.

Present : MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN,
HOLMES, & KNOWLTON, JJ.

*Railroad — Passenger — Loss of Life — Due Care — Statute — Declaration.*

If a passenger on a railroad car alights at his destination, and, after the train has
passed on, starts away from the station over an adjacent crossing of a highway
at grade to go to some other place, he ceases to be a passenger.

A woman alighted from a railroad train upon a station platform near the crossing
of a highway at grade, where the gates were down, and, as soon as the train had
passed, without waiting for the gates to be raised and without looking to see
whether a train was approaching on the other track, hurried over the crossing
and was killed. The crossing was covered with planks for the entire width of
the railroad, platforms sloping down to the tracks stretched away from it on
either side, and there was nothing to prevent passing from the platforms to the
crossing. *Held*, that there was no evidence that she was in the exercise of due
care.

An action is not maintainable against a railroad under the Pub. Sts. c. 112, § 213,
for the loss of life of one not in the exercise of due care, if the declaration is
framed on § 212, and merely avers that the deceased while a passenger, or while
not a passenger in the exercise of due care, was killed by the negligence of the
defendant, its servants or agents.

TORT by the administratrix of the estate of Sarah M. Law-
rence, for causing her death. Writ dated April 28, 1886. The
declaration contained two counts. The first count was as follows:
" The plaintiff says the defendants are a corporation owning
and operating a railroad between Boston and Portland, and a
common carrier of passengers; that the plaintiff's intestate, on
the sixth day of March last, at Malden, which is a station on
said railroad, was a passenger on said railroad; that while such
passenger, and in the exercise of the rights of a passenger, she
was killed, by reason of the negligence and carelessness of the
defendant corporation, and the gross negligence and carelessness
of its agents and servants engaged then in its business in the
management and running of its trains into and through the
station at said Malden, and the plaintiff further says that
the defendant is liable to her in damages to the amount of five
thousand dollars for the death of said intestate, so caused."

The second count alleged that the intestate at the same time and place " was in the exercise of due care, and was not a passenger nor in the employment of the defendant; that while in the exercise of such care she was killed, by reason of the negligence and carelessness of the defendant corporation, and the gross negligence and carelessness of its agents and servants engaged then in its business, in the management and running of its trains." The declaration was amended so as to allege the following specific acts of negligence: 1. The making of improper, unsafe rules, regulations, and time-tables, for the running and management of its trains. 2. The establishment and maintenance of dangerous crossings, platforms, gates, and station accommodations. 3. The neglect to ring the bell or sound the whistle at the crossing. 4. The gross negligence and carelessness of its agents and servants. Answer, a general denial.

At the trial in the Superior Court, before *Bacon* J., there was evidence tending to show the following facts:

The plaintiff was duly appointed administratrix of the estate of Sarah M. Lawrence. The intestate was a passenger from Wyoming to Malden on one of the defendant's inward trains, and alighting at Malden, either on the platform near the Pleasant Street crossing, or on the crossing, was killed at a place about the middle of the crossing by an outward train.

The railroad at the place of the accident consists of two tracks, and runs about north and south, outward trains using the easterly track. The width of each track is about four feet eight and one half inches between the rails, the distance between the tracks is a little less than six feet, and the distance between the platforms a little less than twenty-three feet. Pleasant Street, which crosses the railroad at the station at grade, is about sixty feet wide, and is planked between the tracks the full width of the street. There are platforms on both sides of the tracks on each side of the street, the platforms south of the crossing being each about two hundred feet long, and north of the crossing being each about two hundred and fifty feet long. There are gates at the crossing consisting of a single bar, on a line with the outside of the platforms on the westerly side of the tracks, and at a similar distance on the easterly side, which when lowered close the highway. There are no gates at the ends of the

platforms, nor barriers to prevent passengers from walking off upon the crossing. The platform where the intestate left the train is on the western side of the tracks, is about eleven feet wide, and slants gradually down to the crossing. A horse-car track crosses the railroad tracks through the centre of Pleasant Street, at right angles with the tracks. There is a house for the gateman on the eastern side of the track at the crossing, on the south side of Pleasant Street, just off the line of the street. There is an apothecary store on the south side of Pleasant Street, on the easterly side of the railroad, next to the gateman's house. An express train left Boston at five o'clock, and the train that killed the intestate left Boston one minute later, and made no stops at regular stations before it reached Malden.

John F. McGrath testified, that the express train passed the place of the accident first, and then he saw the inward train coming down; that he was on the easterly side of the track, and did not see the intestate till that train had gone; that then she was between the two tracks, just a little north of the horse-car tracks, going in an easterly direction; that he thought that then the cow-catcher of the outward train from Boston was twenty or thirty feet south of the horse-car track, and probably half a car's length south of the gateman's house; and that when he saw her struck, she had just got both feet on the outward track. On cross-examination he said that she had begun to go across the street; that he heard somebody call out to her, and say, " Go back, lady "; that she could have gone back if she had heard it; that he could have done so; that he thought she had one foot on the track when they shouted to her; that even then she could have stepped back; that he did not see her look towards the train that was coming; that she was going ahead, and was paying no attention to anything that was going on; and that she was hurrying across the track, and not paying much attention to anything but getting across.

Annie Muldoon testified that she and Mrs. Lawrence took the train for Malden, at Wyoming, and sat within two seats of each other; that both got off at Malden, on the north side of Pleasant Street, near the end of the western platform, and walked along the platform and stood at the end of it; and that, as soon as the end of the train passed, Mrs. Lawrence started to cross over towards the apothecary store.

Nelson Jameson testified, that he had known the intestate by sight; that when she was killed he was standing with his team on the western side of the track five or six feet from the gate, waiting to cross; that he saw the train for Boston come in, and saw the gates put down; that he saw her get off on the side and walk down the planks. " I should judge she got out of the second or third car; saw her attempt to cross the track in a hurry, after the train passed by in which she came. Just as quick as the train went by, she scooted across quick; did not see the train from Boston till it struck her; was on the opposite side of the train from Boston, and the train to Boston was between me and this train. When Mrs. Lawrence attempted to cross, she was in front of me, a little on my right-hand side. The gates were down till she was killed. When I first saw her, she was walking off the end of the platform down upon the street. She crossed the street diagonally, a little towards the right. Did not see the train from Boston at all, until it struck her. She walked down upon the street inside the gates, on the railroad side. There was no bell rung or whistle blown by the train from Boston. Don't remember, it was so long ago, whether I saw Mrs. Lawrence look towards the train from Boston. She could not see this train, because the other cars were between her and it, but after she got over the track, on which the train was going into Boston, then she could have seen it, by turning and looking, — by just slewing her head."

Emma E. Bradbury testified, that she " saw the train for Boston come into the station; don't remember any other train before it; saw Mrs. Lawrence get off on the western platform, and walk towards the lower end of the platform. She stood there till the train passed, and just after the train passed, she stepped right behind the last car on to the track, and walked diagonally across Pleasant Street towards the gate-house; she went inside the gate. As soon as the train had left Malden to go to Boston, she stepped right behind the last car; she stepped quick; saw Mrs. Lawrence from the time she got off till she was killed. I don't know that I saw the outgoing train from Boston, till it struck her. I was n't looking that way. From the place where I was, I could have seen the train from Boston when it got to the gate-house. From the place where Mrs. Lawrence stood, when she

started to go across, she could not have seen the train from Boston, because her train was between her and that. Don't remember whether she looked up or down the track before crossing; she might have turned her head one way or the other. Noticed she was in a hurry to cross the track, that was all. She continued to hurry till she was struck."

Samuel W. Ferbish testified that he was a hack-driver, and was standing on the eastern side of the track, probably twenty-five feet from the Pleasant Street gate, waiting for both trains to come in; that he saw the express from Boston go through first, and then the train to Boston come in; that he first saw the intestate just after the hind end of the train for Boston went by; that she was coming towards where he stood; that he saw her struck; and that, if she had looked, she could have seen the engine that was coming, but she did not look.

Albert W. Alger testified that he was the engineer of the train that left Boston at one minute past five o'clock; that he got to Malden at seventeen minutes past five o'clock; that he did not see the intestate, and did not know that his engine struck anybody till the fireman told him. On cross-examination he testified that he shut off steam very soon after he came around the gas-house curve; that the train for Boston was then in the Malden station, and was getting under way; that he passed the rear car about at the end of the southern platform; that at that time he was going as fast perhaps as from five to seven miles an hour; that the bell was rung, and that he reversed his engine when told by the fireman that something was happening, or likely to happen; that he was using the atmospheric brake when he passed the rear end of the other train, in order to make his stop at the station; and that he did not whistle when a crossing is at a station where he was going to make a stop.

Michael M. Moynahan testified that he was a hack-driver, and stood on the eastern platform, near the crossing; that just as soon as the inward train started off, the intestate started to go diagonally across Pleasant Street; that she was walking quite fast; that he kept his eye on her till she was killed, but did not see her look towards the engine at all; and that she was going quite fast, was looking in the direction in which she was going, and did not pay attention to anything else.

Upon this evidence the judge ruled, at the request of the defendant, that the action could not be maintained, and directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.

*C. G. Fall*, for the plaintiff.

*S. Lincoln & W. I. Badger*, for the defendant.

KNOWLTON, J.   The plaintiff's intestate had ceased to be a passenger before the accident which caused her death.   She had reached her destination, had alighted from the train, had taken a position upon the sidewalk of the highway, and thence had started to cross the track along the street, not upon her way to the defendant's station, but to some other place which she had in mind.

Was there any evidence at the trial that she was in the exercise of due care?   It is well established law, in this Commonwealth and elsewhere, that one who starts to cross a railroad track without looking for approaching trains, unless he has a good reason for not looking, is not in the exercise of proper care.   And this rule has been repeatedly applied to persons crossing a double-track railroad, who have started immediately after the passage of one train without looking for the approach of another.   *Warren v. Fitchburg Railroad*, 8 Allen, 227. *Bancroft v. Boston & Worcester Railroad*, 97 Mass. 275. *Mayo v. Boston & Maine Railroad*, 104 Mass. 137, 141. *Wheelwright v. Boston & Albany Railroad*, 135 Mass. 225.

There is nothing in the case at bar to relieve the plaintiff from the operation of this rule.   The gates upon the highway were down, as a warning that the tracks were in use, and that it was not safe to cross.   As soon as the train from which the plaintiff's intestate had alighted passed on, she started to cross, without waiting for the gates to be raised, and without looking to see whether a train was approaching upon the other track.   The evidence shows that, if she had looked after the first train passed, she could not have failed to see that by which she was afterwards struck.   The latter train, when it met the former one from which she alighted, was going at the rate of five to seven miles an hour, with its atmospheric brake on, about to make the stop at the station.   She must have known that this was a double-track railroad, upon which trains running in each direc-

tion were always to be expected.    There was no express or implied invitation to her to cross, nor any excuse for her crossing without looking for a coming train.    There was no evidence in the case to warrant a finding that she was in the exercise of due care.

·The declaration contains two counts, the first alleging that the plaintiff's intestate was a passenger, and claiming under that part of c. 112, § 212 of the Public Statutes which makes a railroad corporation liable when the life of a passenger is lost through its negligence, or the gross negligence of its servants or agents, and the second claiming under that part of the same section which creates a liability when the life of a person in the exercise of due diligence and not a passenger is lost by reason of such negligence.    This last count contains all the allegations appropriate to a claim under this branch of the statute, and no others.

Section 213 of the same chapter creates a liability in a particular class of cases, where a person is injured by collision with the engines or cars of a railroad corporation at a crossing of a highway or town way at grade, and it appears that the corporation neglected to ring the bell or blow the whistle as required by law, and such neglect contributed to the injury.    In such cases, the person injured may recover, unless it appears that he was at the time guilty of gross or wilful negligence, or was acting in violation of law, and that such negligence or unlawful act contributed to the injury.

The declaration does not contain the allegations necessary to bring the case within this section.    It is nowhere alleged in it that the accident occurred at a crossing of a highway or town way, or that the injury was by collision with an engine or car of the defendant.    On the contrary, both counts follow in their averments the precise language of those parts of § 212 under which they were respectively brought.    Under the last count there are certain specifications of negligence, which do not change the character of the count, nor contain the allegations material to a claim under § 213.    The suit must therefore be deemed to have been brought under.§ 212, and the plaintiff cannot hold the defendant to answer under the provisions of § 213.
*Wright* v. *Boston & Maine Railroad,* 129 Mass. 440.

The Superior Court has ample power to allow amendments in all cases pending therein, and if the plaintiff at the trial thought her action maintainable under that section of the statute, and desired to avail herself of its provisions, she should have applied for leave to amend her declaration. In the opinion of a majority of the court, the entry must be

*Exceptions overruled.*