PELATIAH FLETCHER *vs.* FITCHBURG RAILROAD COMPANY.

Suffolk.   January 15, 1889. — May 9, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, HOLMES,
& KNOWLTON, JJ.

*Personal Injuries — Railroad Crossing — Traveller on Highway — Due Care — Declaration — Averment of Negligence.*

A railroad, whose tracks ran easterly and westerly at a highway grade crossing, had at that point two main tracks within two side-tracks at the usual distance apart, west-bound trains using the northerly main track, east-bound trains the southerly one.   A barn on the highway about thirty feet south of the crossing cut off at that point an extended view along the railroad to the east.   The driver of a four-horse team whose horses were not afraid of cars approached the crossing from the south during the forenoon, and stopped his horses in the way opposite the barn near the crossing, just as a freight train was passing over it on the southerly side-track bound east.   He was familiar with the crossing, and knew that there was no gate or flagman there, and that a passenger train from the east was due there daily at about that time.   When the freight train had passed the crossing he at once started to cross, and had no sooner got far enough to be able to look past the freight train to the east than he saw right upon him the passenger train, which struck and injured him.   *Held*, that he was not in the exercise of due care.

A declaration in an action against a railroad company for personal injuries alleged that while the plaintiff was driving on the highway at a crossing of the railroad at grade, and "in the exercise of due and ordinary care, the defendant, by its agents and servants, and by reason of the insufficient guard and protection at said crossing, negligently ran and drove an engine attached to a long train of cars against the plaintiff, and threw him violently to the ground, and seriously injured him in his person."   *Held*, that the allegation of negligence was not restricted to neglect to furnish a gate or flagman.

TORT for personal injuries occasioned to the plaintiff by being struck by a locomotive engine belonging to the defendant, at a

highway crossing in Ayer. The first count of the declaration was as follows :

" And the plaintiff says that the defendant is a corporation, owning and running a railroad between the city of Boston and the city of Fitchburg ; that while driving his team on the highway at a crossing known as Flanagan's on said railroad in the town of Ayer, in the exercise of due and ordinary care, the defendant, by its agents and servants, and by reason of the insufficient guard and protection at said crossing, negligently ran and drove an engine attached to a long train of cars against the plaintiff, and threw him violently to the ground, and seriously injured him in his person."

Trial in the Superior Court, before *Thompson,* J., who allowed a bill of exceptions, which so far as material was as follows.

Evidence was introduced tending to show the following facts. The defendant's railroad at this crossing ran east and west, and consisted of two main tracks, and two side-tracks, one of which was to the north and the other to the south of the main tracks, all four tracks being from six and a half to seven feet, or the usual distance, apart. Trains on the defendant's railroad coming from Boston and bound west took the north main track, and those east bound the south main track. The highway in question ran north and south, and crossed the railroad at grade at a point about half a mile to the east of a station of the defendant in Ayer. The southerly side-track of the railroad was connected with the south main track by a switch about twenty feet east of the crossing. The defendant maintained neither gates nor a flagman at this crossing. A barn was situated on the east side of the highway and south of the crossing, about thirty feet from the southerly side-track of the railroad. This barn, together with certain woods, cut off the view of persons travelling on the highway, and approaching the crossing from the south, along the railroad to the east, but such persons upon passing the barn would have an unobstructed view in that direction as far as a curve in the railroad, about twenty-three hundred feet distant. The driver of a four-horse team in passing this barn would, however, be unable to see along the tracks to the east, until his horses were nearly upon the crossing. On March 26, 1887, at about nine o'clock in the forenoon, the plaintiff, who

was engaged in drawing sand with a four-horse team from a sand-pit on the north side of the railroad over the crossing, approached it from the south, and in driving his team over the crossing was struck by the engine of a west-bound passenger train, receiving the injuries.

The plaintiff testified, on direct examination, that as he approached the crossing an east-bound freight train was upon the southerly side-track upon the crossing, and was backing up towards the station to get certain freight cars standing there ; that as he came towards the crossing he held his horses down a little and brought his team to a standstill; that he could not see along the tracks to the east because of the barn; that presently the freight train, the cars having been attached to it, passed by the crossing towards the east; that as soon as it had passed by he started the horses over the crossing, and as soon as the rear cars of the freight train had passed along far enough so that he could look past that train towards the east, he saw the engine of the passenger train coming right upon him ; that before he started across the tracks he had seen a west-bound freight train standing on the north main track at the Ayer station ; and that, although he listened, he heard no warning signal of any kind.

On cross-examination, the plaintiff testified that, upon seeing the east-bound freight train on the crossing and backing up to attach the freight cars on the side-track, he stopped his horses, so that, as he sat upon the wagon, he was nearly opposite the barn ; that his horses were not frightened at all, and he had driven up quite near to the crossing ; that when he started his horses again the freight train, with the cars attached to it, " was going over and got over the crossing," and the rear car of the train had got " more than a car's length or two cars' length " beyond the crossing; that when he started up his horses the freight train was in such a position that he could not see along the north main track to the east; that he was very familiar with the crossing and the railroad at the point in question; that he did not know what train it was that struck him except as he had " been told since " ; that he knew that for several years a morning train from Boston arrived regularly at Ayer about nine o'clock A. M.; that although he saw a west-bound

train standing at the station on the north main track, he did not rely on that fact in crossing, because he " was n't aware what time it was"; and that the day was a fair day with perhaps snow on the ground, but he had no recollection as to its being windy. The plaintiff also, on cross-examination, in reply to the question, " Why did n't you wait, before you started up, until this freight train was out of the way, so you could see whether anything was coming on the west-bound main track ? " said, " Well, I took all the precaution that I could to look down there, and saw nothing, — I could n't say why I did n't wait till they went farther off " ; to the question, " Why did n't you wait till that train had gone out of the way, so as to give you a view of the west-bound track ? " he replied, " I could n't tell " ; to the further question, " Then, for all you know, if you had waited a moment, till this freight train had gone down far enough, you would have had an unobstructed view of the main track ? " he replied, " Certainly, if the freight train, — if I had stopped till it got farther out of the way, I could have seen " ; and to the further question, " Can you tell the jury why you did n't wait to see if there was a train coming on this west-bound track or not, if you can ? " he replied, " I am sure I never thought of that. I thought there was a chance to pass, and I went through there."

On re-direct examination, the plaintiff replied in the negative to the question, " You have been asked why you did n't stop till that freight train got out of the way; had you any reason to believe that a train was coming in the direction of Boston across that crossing ? "

The defendant called as a witness the engineer of the passenger train which struck the plaintiff, who testified that he blew the whistle as he approached the crossing ; that there was no freight train on the south main track or side-track bound east ; that at the time there was a signal at the Ayer station for him to keep back his train, and he had shut off steam and was going at a rate of from eighteen to twenty miles an hour ; and that he was looking along the track in front of him, but had no time after he saw the plaintiff's horses on the crossing to give a danger signal. The defendant also introduced evidence tending to show that the bell on the passenger engine was rung as it approached the crossing.

The judge refused to rule, as requested by the defendant, that " under the first count of this declaration the plaintiff cannot recover on the ground of any neglect on the part of the defendant, excepting the neglect to furnish a flagman or gate." The judge also refused to rule, as requested by the defendant, ' that upon the whole evidence the jury was not authorized to find a verdict for the plaintiff, and that there was no evidence that the plaintiff was in the exercise of due and ordinary care."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

The case was argued at the bar in January, 1889, and afterwards was submitted on the briefs to all the judges, except *C. Allen*, J.

*G. A. Torrey*, for the defendant.

*F. S. Hesseltine & T. Curley*, for the plaintiff.

KNOWLTON, J.  The only important question in this case is whether there was any evidence that the plaintiff, at the time of the accident, was in the exercise of ordinary care.

· Certain facts are undisputed. The plaintiff was on the south side of the railroad, driving a four-house team northward, going for a load of sand. There were two main tracks on the railroad at the crossing of the highway, and two side-tracks, one north and the other south of the main tracks. The distance between adjacent tracks was about six and a half or seven feet. On the . south side of the railroad, and on the east side of the highway, was a barn thirty feet distant from the nearest side-track. A person driving northward on the highway, as soon as he had passed the barn, would have an unobstructed view along the defendant's track towards the east for a distance of over twenty-three hundred feet. The plaintiff was struck by the engine of a regular passenger train coming from the east on the north main track. The accident happened at about nine o'clock in the forenoon, and the plaintiff had known for some years that a passenger train from the east arrived there daily at about that time. He was also familiar with the crossing, and knew that no gate nor flagman was maintained there. There is some conflict of evidence as to the other facts; but according to the plaintiff's account, upon which alone he relies, a freight train had backed up over the crossing to get some cars which were

standing on the southerly side-track, and the plaintiff, as he was approaching the track, held his horses back a little, and just came to a stop as the train was passing over the crossing. When the cars got by the crossing he started to cross, and as soon as he got far enough across to enable him to look past the freight train, he saw the engine of the passenger train right upon him. He testified that, when he stopped his team for the freight train to pass, he was right opposite the barn; that when he started his team the freight train " was going over and got over the crossing "; that he could not say whether the rear car had got over " more than a car's length or two cars' length"; and that the freight train was in such a position that he could not see the northerly main track.

As a general rule, a person is not in the exercise of due care who attempts to cross a railroad track without taking seasonable precaution to assure himself by actual observation that there is no danger from approaching trains. It has been held in many cases that he cannot properly trust his sense of hearing alone, but must use his sight as well, if it is reasonably practicable so to do. *Butterfield* v. *Western Railroad*, 10 Allen, 532. *Allyn* v. *Boston & Albany Railroad*, 105 Mass. 77. *Wright* v. *Boston & Maine Railroad*, 129 Mass. 440. *Tully* v. *Fitchburg Railroad*, 134 Mass. 499. *Wheelwright* v. *Boston & Albany Railroad*, 135 Mass. 225. This rule has been held applicable where a plaintiff's attention has been diverted, or his view of a coming train has been obstructed by another train which has just passed. *Bancroft* v. *Boston & Worcester Railroad*, 97 Mass. 275. *Mayo* v. *Boston & Maine Railroad*, 104 Mass. 137, 141. *Allerton* v. *Boston & Maine Railroad*, 146 Mass. 241. *Granger* v. *Boston & Albany Railroad*, 146 Mass. 276.

In the case at bar, the plaintiff was driving a heavy team; his horses, as he testified, were not frightened at the cars; there was no apparent excuse for haste; he stopped opposite the barn, where it was impossible to determine whether a train was coming from the east, and a delay of one or two minutes after the freight train had gone would have made the track visible by the corner of the barn towards the east for a long distance; but without any reason for so doing that can be discovered in the facts, or that he could give in his testimony, he drove upon the

track when it was impossible to use his sight for his protection, and when it was probably impossible to distinguish the sound of the coming passenger train from the noise of the intervening freight cars. This was an act which the general knowledge and experience of men at once condemn as careless. A majority of the court are of opinion that there was no evidence that he was in the exercise of due care.

The case is very different from *French* v. *Taunton Branch Railroad*, 116 Mass. 537, in which it appeared that the plaintiff was crossing a single track railroad, and, seeing that a freight train had just passed, did not look to see if another train was closely following it, and was struck by a car which had been detached to make a flying switch. So, too, in *Griffin* v. *Boston & Albany Railroad*, 148 Mass. 143, the plaintiff, having seen a freight train go by, was struck by cars following close behind it, which had accidentally become separated from the train. In each of these cases it was left to the jury to determine whether due care required the plaintiff to look for detached cars following immediately behind a passing train. The case at bar is also clearly distinguishable from *Hanks* v. *Boston & Albany Railroad*, 147 Mass. 495.

The rule as to looking for trains when about to cross a railroad, laid down in the cases which we have cited, prevails in nearly all the courts in this country. The material facts in *Marty* v. *Chicago, St. Paul, Minneapolis, & Omaha Railway*, 38 Minn. 108, were almost identical with those in the case at bar. It is said in the opinion, that, after the plaintiff " had crossed the track of the St. Paul and Duluth road, he came up to within about twenty-five feet of the westerly track of the defendant's road, which was used for incoming trains, and stopped to wait for the passing of a freight train then occupying the crossing and going into the city. This train obscured the view of the other track, and the plaintiff did not see or hear the approach of the outgoing passenger train due at or about that time at the crossing on its way east. But as soon as the freight train had passed, he immediately started up, and drove on the second track used for outgoing trains, and was intercepted by the engine of the passenger train. He knew that the easterly track was used for outgoing trains, and had before on several occasions seen two

trains there under similar circumstances, and knew that the trains there were frequent, and knew that a train went out in the evening, and that no flagman was stationed there. He testifies that he could not see the passenger train because the freight train was in the way, and he drove on behind the latter, so that he did not discover the approach of the engine till it was within a few feet of him. . . . He admits that but for the freight train the track could have been seen at least five hundred feet in the direction from which the passenger train came. . . . A trifling delay would have enabled him to look, and this precaution was the more important because the noise of the passing freight train would prevent him from hearing the approach of the other train. The evidence is clear, not conflicting, and the facts not complicated, and the case was properly passed on by the court, without submitting it to the jury."

So in *McCrory* v. *Chicago, Milwaukee, & St. Paul Railway*, 31 Fed. Rep. 531, where the plaintiff's view of the passenger train that struck him was cut off by smoke from a freight train which had just passed, the judge says that the plaintiff "must have known that there were two tracks, and that a train was liable to come on each track; and if, when approaching a track, he finds anything which temporarily obstructs his vision, it is his duty to wait until the temporary obstruction is removed. He cannot say, ' There is something temporarily obstructing my vision, but I will take it for granted that there is no danger' and undertake to cross the track. . . . The law lays it down clearly that a man must look and listen. And if, by looking and listening, he could ascertain the approach of a train, and failed to do so, he is guilty of contributory negligence, and cannot recover." See also *Cincinnati, Hamilton, & Indianapolis Railroad* v. *Butler*, 103 Ind. 31; *Stubley* v. *London & North Western Railway*, L. R. 1 Ex. 13; *Chase* v. *Maine Central Railroad*, 78 Maine, 346; *Heaney* v. *Long Island Railroad*, 112 N. Y. 122; *Greenwood* v. *Philadelphia, Wilmington, & Baltimore Railroad*, 124 Penn. St. 572.

The defendant's first request for a ruling was rightly refused. The allegation of negligence in the first count of the declaration was not so restricted as the request implied.

*Exceptions sustained.*