JAMES D. TYLER *vs.* OLD COLONY RAILROAD COMPANY.

Worcester.   October 3, 1892. — October 22, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Railroad Accident — Grade Crossing — Flagman — Evidence — Due Care — Negligence.*

In an action against a railroad corporation, under the Pub. Sts. c. 112, § 212, for causing the death of the plaintiff's intestate at a crossing at grade of a highway in a town by the railroad, evidence that, twelve years before the accident, the defendant's lessor, another railroad corporation, had, in compliance with an oral application of the selectmen of the town, maintained a flagman at the crossing,

is properly excluded; and the fact that the defendant covenanted in the lease to use the railroad in accordance with the laws of the Commonwealth, and to maintain "the demised railroad properties," which consisted of "tenements, tracks, depot grounds, stations, superstructures, and fixtures," in the same condition they were then in, does not enlarge the plaintiff's rights.

In an action against a railroad corporation, under the Pub. Sts. c. 112, § 212, for causing the death of the plaintiff's intestate at a crossing at grade of a highway by the railroad, a record of the county commissioners, showing that the defendant's lessor, seventeen years before the accident, had brought a petition against another railroad corporation for damages for taking a part of the petitioner's land and occupying a part of its location, and reciting that the acts of the respondent would make the crossing so unsafe as to require the presence of a flagman, is rightly rejected.

In an action against a railroad corporation, under the Pub. Sts. c. 112, § 212, for causing the death of the plaintiff's intestate at a crossing at grade of a highway by the railroad, there was evidence that, after the defendant came into possession of the railroad under a lease, it continued to employ the same station agent, one C., who had been employed by the defendant's lessor; and that C. for some time afterwards continued to flag trains at the crossing. C. testified that he ceased to flag the trains a year and a half before the accident; and that he was not employed to flag the trains, but did so because he deemed it for the defendant's interests to do so. Other witnesses testified that they had seen C. flagging trains at the crossing within a short time before the accident, but they could not state any specific dates within seven months previously. The plaintiff offered in evidence a statement made by C., immediately after the accident, explaining why he had not flagged the train. The plaintiff also called C. as a witness, and offered to show by him that he stated after the accident that he did not flag the train because the section hands were at work near the crossing when the accident occurred. This evidence was excluded. *Held*, that the plaintiff had no ground of exception.

In an action against a railroad corporation, under the Pub. Sts. c. 112, § 212, for causing the death of the plaintiff's intestate at a crossing at grade of a highway by the railroad, evidence that the intestate was about seventy-three years old and in good health, except that she was slightly lame, that she wore glasses because she was near-sighted, it not appearing that she could not see well with glasses, that she lived thirty rods from the crossing, and all the way from her house to the crossing the tracks of the railroad were visible in the direction from which the train came for a distance of a quarter of a mile, and that in the daytime she walked from her house on to the crossing, where she was struck and instantly killed, without looking to see if any train was coming, will warrant the presiding judge in ruling that there was no evidence of due care on her part, and in directing a verdict for the defendant.

In an action against a railroad corporation, under the Pub. Sts. c. 112, § 212, for causing the death of the plaintiff's intestate at a crossing at grade of a highway by the railroad, it is immaterial that there was some evidence that the whistle on the engine was not blown before the accident at the usual place for blowing it, if it appears that the bell was rung.

If it is customary for a railroad corporation to have a flagman at a crossing at grade of a highway by the railroad, and he is absent, this does not excuse a traveller on the highway from looking to see if a train is coming before he attempts to cross the railroad tracks, when there is no obstacle to prevent his seeing.

TORT, by the administrator of the estate of Charlotte Felton, under the Pub. Sts. c. 112, § 212, for causing her death at a crossing at grade of a highway in Berlin by the tracks of the railroad operated by the defendant under a lease from the Boston, Clinton, and Fitchburg Railroad Company. Trial in the Superior Court, before *Maynard*, J., who, at the defendant's request, directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions, which appear in the opinion.

*H. Parker*, for the plaintiff.

*F. P. Goulding*, for the defendant.

LATHROP, J. 1. The testimony of one Bassett was properly excluded. The fact that, twelve years before the accident, the defendant's lessor had, in compliance with an oral application of the selectmen of Berlin, maintained a flagman at the crossing, had no tendency to show that due care on the part of the defendant required that one should be stationed there at the time of the accident. See *Menard* v. *Boston & Maine Railroad*, 150 Mass. 386. There is nothing in the terms of the lease which enlarges the rights of the intestate. The defendant covenanted to use the road in accordance with the laws of the Commonwealth, and to maintain " the demised railroad properties " in the same condition they were then in. The demised properties were the " tenements, tracks, depot grounds, stations, superstructures, and fixtures." There is no covenant to keep a flagman wherever a flagman was then kept. If the covenant to use the road in accordance with the laws of the Commonwealth means that the road will use due care towards third persons, it adds nothing to the obligation which the defendant was under when it undertook to operate the railroad.

2. The record of the county commissioners was rightly rejected. It had nothing to do with establishing a flagman at the crossing, and imposed no duty upon the petitioner in this respect. It was a petition by the Boston, Clinton, and Fitchburg Railroad Company, in 1874, against the Massachusetts Central Railroad Company, for damages for taking a part of the petitioner's land, and occupying a part of the petitioner's location. It is true that the petition recites that the acts of the respondent will make the crossing so unsafe as to require the presence of a flagman, but it does not appear that any damages were

awarded on this account, and they could not lawfully have been awarded. *Massachusetts Central Railroad* v. *Boston, Clinton, & Fitchburg Railroad,* 121 Mass. 124. The fact that the defendant's lessor, seventeen years before the accident, represented that a flagman would be required at the crossing, had no tendency to show that due care required one at the time of the accident.

3. There was evidence that, after the defendant came into possession of the railroad, it continued to employ the same station agent, one Carter, who had been employed by the Boston, Clinton, and Fitchburg Railroad Company; and that Carter for some time thereafter continued to flag trains at the crossing. The accident was on June 6, 1891; and Carter testified that he ceased to flag the trains a year and a half before the accident; and that he was not employed to flag the trains, but did so because he deemed it for the interests of the defendant to do so. Other witnesses testified that they had seen Carter flagging trains at the crossing within a short time before the accident, but they could not state any specific dates after November, 1890. The plaintiff offered in evidence a statement made by Carter, immediately after the accident, explaining why he had not flagged the train. The plaintiff also called Carter as a witness, and offered to show by him that he stated after the accident that he did not flag the train because the section hands were at work near the crossing when the accident occurred. This evidence was excluded. As a declaration of the defendant's servant, the evidence was inadmissible. *Lane* v. *Bryant,* 9 Gray, 245. *Williamson* v. *Cambridge Railroad,* 144 Mass. 148. *McKinnon* v. *Norcross,* 148 Mass. 533. So far as the statement, when offered to be proved by Carter, tends to contradict his testimony that he had not flagged trains at the crossing within a year and a half, we do not regard its exclusion as affording the plaintiff any ground of exception, as we shall assume, in considering the question whether the plaintiff's intestate was in the exercise of due care, that it was customary to flag the crossing.

4. The action is brought under the Pub. Sts. c. 112, § 212, which requires that a person not a passenger shall be "in the exercise of due diligence" to entitle him to recover. The plaintiff's intestate was about seventy-three years of age, and in good health, except that she was slightly lame. She wore glasses

because she was near-sighted, but it does not appear that she could not see well with glasses. She lived thirty rods from the crossing; and all the way from her house to the crossing the tracks of the defendant's road were visible in the direction from which the train came for a distance of a quarter of a mile. She walked from her house on to the crossing without looking to see if any train was coming, where she was struck and instantly killed. This was in the daytime, and it is plain that, had she made any use of her faculties, she could not have failed to see the train. Under these circumstances, we are of opinion that the presiding justice rightly ruled that there was no evidence of due care on her part, and properly directed a verdict for the defendant. *Butterfield* v. *Western Railroad,* 10 Allen, 532. *Bancroft* v. *Boston & Worcester Railroad,* 97 Mass. 275. *Allyn* v. *Boston & Albany Railroad,* 105 Mass. 77. *Wright* v. *Boston & Maine Railroad,* 129 Mass. 440. *Tully* v. *Fitchburg Railroad,* 134 Mass. 499. *Wheelwright* v. *Boston & Albany Railroad,* 135 Mass. 225. *Allerton* v. *Boston & Maine Railroad,* 146 Mass. 241. *Fletcher* v. *Fitchburg Railroad,* 149 Mass. 127. *Donnelly* v. *Boston & Maine Railroad,* 151 Mass. 210. *Debbins* v. *Old Colony Railroad,* 154 Mass. 402. *Young* v. *Old Colony Railroad,* 156 Mass. 178.

If there was some evidence that the whistle was not blown at the usual place for blowing it, there is no evidence in contradiction of the testimony that the bell was rung; and the statute only requires that the bell shall be rung or the whistle sounded. Pub. Sts. c. 112, § 163. Indeed, in *Butterfield* v. *Western Railroad, ubi supra,* it was held that a traveller upon the highway, who goes upon a railroad track without looking to see if a train is coming, cannot recover for an injury there received, although the bell is not rung or the whistle sounded. It was said in this case that, while a traveller has the right to expect that this duty will be performed, " this expectation does not excuse him from exercising reasonable care to ascertain by sight as well as hearing whether there is a train coming immediately upon him as he attempts to cross the track."

The same remark is true as to the absence of a flagman. If it is customary to have one at a crossing, and he is absent, a traveller has a right to rely to some extent on this fact; but this

does not excuse his not looking at all to see if a train is coming, when there are no obstacles to prevent his seeing if he looks. *Cadwallader* v. *Louisville, New Albany, & Chicago Railway*, 128 Ind. 518, a case very like the case at bar.

*Exceptions overruled.*