JOSIAH G. CHASE, administrator, *vs.* MAINE CENTRAL
RAILROAD COMPANY.

Suffolk.    December 10, 11, 1896. — January 9, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Railroad — Grade Crossing — Due Care — Action.*

The fact that a traveller, when fifty feet from the crossing at grade of a highway
by a railroad, pulled out his watch and looked at it, without any act or word
indicating what his purpose in so doing was, will not warrant the jury, in an
action for personal injuries caused by a collision with a train at the crossing, in
finding that the regular time of the passing of the train was known to him, that
he looked to see if the time had passed, and that, when he found that it was nine-
teen minutes after the time, he had a right to assume that the train had passed.

If a traveller in an open wagon approaches the crossing at grade of a highway by
a railroad, where neither a flagman nor a gate is maintained, driving with his
reins loose, at a moderate trot, without stopping or slackening speed, not look-
ing, although the view is not obstructed, or listening for an approaching train,
and not thinking, apparently, anything about it, until, as he gets to the railroad,
the horse starts up and attempts to cross the track in front of a train, and he
then makes an effort to stop the horse, but is struck and injured by the train,
an action cannot be maintained against the railroad corporation for such injury.

TORT, for personal injuries occasioned to the plaintiff's tes-
tator, Jeremiah R. True, by a collision with a train of cars of
the defendant. Trial in the Superior Court, before *Gaskill*, J.,
who ruled that the plaintiff had offered no evidence which would
authorize the jury in finding that his testate was in the exer-
cise of such due care as is required by law to enable the plaintiff
to recover; directed the jury to return a verdict for the defend-
ant; and, at the plaintiff's request, reported the case for the
determination of this court. If the ruling and direction were
right, judgment was to be entered on the verdict; otherwise, a
new trial was to be granted.

*R. M. Morse & J. W. Spaulding*, for the plaintiff.
*A. A. Strout & H. N. Rice*, for the defendant.

LATHROP, J. This is an action of tort, at common law, for
injuries sustained by the plaintiff's testate, by reason of the
wagon in which he was driving coming into collision with a
train of cars of the defendant, at a place in Richmond in the
State of Maine, where a highway crossed the single track road

of the defendant, at grade. The accident happened in the after-
noon of August 17, 1887, and the trial took place in the Superior
Court in January, 1896. The presiding judge, at the close of
the plaintiff's evidence, ruled that the plaintiff had offered no
testimony which would authorize the jury in finding that the
testate was in the exercise of such due care as is required by
law to enable the plaintiff to recover. The report set forth
sufficient acts of negligence on the part of the defendant, in run-
ning its train at a higher rate of speed than is allowed by law
where a flagman or a gate is not maintained at a crossing at
grade, and in not ringing a bell and sounding a whistle.

On the question of due care on the part of the testate, there
was evidence tending to show the following facts. On the day
of the accident, the testate was driving a horse in an open Con-
cord wagon, at a moderate trot, from Pleasant Street through
South Street, westerly towards and across the railroad. With
him in the wagon was a boy named Haley, who was then six
years and eight months old, and who was the only witness who
was present at the time of the accident. Pleasant Street ap-
pears, from a plan produced at the trial, to be about four hun-
dred and twenty feet from the crossing on South Street, where
the accident occurred. As the testate approached the track he
did not stop or slacken speed, but when he got to the railroad
the horse started up, and attempted to cross the track in front
of the train, which was approaching from the north. Then the
testate attempted to pull up the reins, which had been loose,
that is, not pulled up tight, but did not stop the horse. The
train struck the wagon, and the testate and the boy were thrown
violently therefrom, and the testate died from his injuries seven-
teen days afterwards.

There was also evidence that when near the house of one
Scott, which is about fifty feet from the crossing, the testate
pulled out his watch, and looked at it; that the train which
struck the wagon was known as the "Flying Yankee," and it
passed through the town once a day going south; that the time
when it was due was well known, approximately; that on the day
of the accident it was late, one witness testifying it was nine-
teen minutes late; and that the train was making no more noise
than usual, and was accompanied by a great cloud of dust.

There was also evidence that this train in summer was as likely to be late as on time.

South Street, from Pleasant Street to the crossing, was a level, smooth road. There was evidence that the railroad before reaching the crossing passed through a cut, the highest point of which was seven feet, and distant two hundred feet from the crossing. There were also some fences, three and one half to four feet high, and a building and barn, and some fruit trees, all of which it is contended interfered with the view of the approaching train.

It is obvious, however, that a man on the seat of an open Concord wagon would not have his view interfered with by the fences, or by the fact that the cars passed through the cut. The building and barn were on the corner of Pleasant Street and South Street, and could not have interfered with the testate's line of vision except for a few moments after turning into South Street. If the fruit trees were high enough to obstruct the view of the testate, it appears from the plans and photographs that, during nearly all the time he was on South Street, these trees would not interfere with his seeing the train for a distance of at least two hundred feet from the crossing until it arrived there.

The principal argument for the plaintiff is based upon the theory that the evidence shows that the railroad was visible but from two places on South Street between Pleasant Street and the crossing, namely, at a point fifty feet from the crossing, and from one farther towards Pleasant Street, the exact position of which is not clearly defined; and that when the testate arrived at the last point the train had not reached the point on the railroad visible from there, and at fifty feet from the crossing it was too late to do anything.

So far as the testimony goes, we do not think that it supports the plaintiff's contention. It nowhere appears in the testimony that the railroad was visible from South Street only from these two points. The report states as to the testimony of one Randlette as follows: "The witness testified as to one particular spot, which was fifty feet from the track, at which he could see, by close looking, the smoke-stack, and the roof of the cars. The position of the train when seen from this spot was placed by the witness successively 'a little south of the Spruce Street cross-

ing, near the whistling post,' which was five hundred and fifty feet from the South Street crossing, and finally at a point marked on the plan two hundred and seventy-three feet from the crossing." It does not appear from the report whether this witness·was on the ground when he made his observation, or seated on a wagon. The only other testimony comes from one Small, who, before the time of the accident, had ridden through the cut on locomotive engines. He testified that the South Street crossing was visible from the cab of the engine, when the engine was about opposite the whistling post and distant five hundred and fifty feet from the crossing. On cross-examination, he testified that when riding on the engine he could see the crossing, and within a radius of' one hundred feet from the centre of the crossing. He was then asked: " Could you see the people here ? " and answered, " I never took any notice." This question was then put : " You never noticed whether you could, or could not ? " His answer was, " I can see all round here in the radius, you know. I, of course, never looked right over there." The report states that at the last sentence, the witness pointed farther to the east on South Street than the radius of one hundred feet from the centre of the crossing.

From the testimony of these witnesses, the jury would not be warranted in finding that a person driving on South Street could not see an approaching train except from two points ; and, as we have already seen, the plans and photographs show an entirely different state of things.

The plaintiff further contends that the fact that the testate pulled out his watch and looked at it when he was fifty feet from the crossing would warrant the jury in finding that the regular time of the passing of the train was known to the testate ; that he looked to see if this time had passed ; and that when he found that it was nineteen minutes after the time, he had a right to assume that it had passed. But his purpose in looking at his watch was purely a matter of conjecture. There is nothing to show that it was accompanied by any act or word indicating what his purpose was.

The case presented, then, is of a man approaching a railroad crossing at grade, driving with his reins loose, at a moderate trot, without stopping or slackening speed, not looking or listen-

ing for an approaching train, and not thinking, apparently, any-thing about it, until, as he got to the railroad, the horse starts up, and attempts to cross the track, and the driver makes an effort to stop the horse when it is too late.

If this case had been tried in Maine, there can be no doubt that the plaintiff would not have been entitled to recover. It is well settled in that State that where a collision occurs between a traveller upon the highway and a train of cars, it is *prima facie* evidence of negligence on the part of the traveller; that a person approaching a railroad crossing at grade must look and listen before passing over; and that, if his view is obstructed, he must stop and listen carefully. *Grows* v. *Maine Central Railroad*, 67 Maine, 100. *State* v. *Maine Central Railroad*, 76 Maine, 357. *Lesan* v. *Maine Central Railroad*, 77 Maine, 85. *Chase* v. *Maine Central Railroad*, 78 Maine, 346, 353. *State* v. *Boston & Maine Railroad*, 80 Maine, 430. *Smith* v. *Maine Central Railroad*, 87 Maine, 339.

We have no occasion to consider whether, as the cause of action accrued in Maine, the rules of law adopted by the highest court of that State should govern us in determining this case. See *Walsh* v. *New York & New England Railroad*, 160 Mass. 571. For we are of opinion that, on the evidence in this case, the ruling of the court below was right according to our own de-cisions. The general rule in this Commonwealth undoubtedly is, that, as a railroad crossing is a dangerous place, a traveller on the highway is bound to make a reasonable use of his sense of sight as well as of hearing, in order to ascertain whether he will expose himself to danger; that if he fails so to use his senses, without reasonable excuse, he fails to use reasonable care, and that the burden is on the plaintiff to show such care, even though the defendant is in fault. *Butterfield* v. *Western Rail-road*, 10 Allen, 532. *Allyn* v. *Boston & Albany Railroad*, 105 Mass. 77. *Wright* v. *Boston & Maine Railroad*, 129 Mass. 440. *Tully* v. *Fitchburg Railroad*, 134 Mass. 499. *Wheelwright* v. *Boston & Albany Railroad*, 135 Mass. 225. *Allerton* v. *Boston & Maine Railroad*, 146 Mass. 241. *Fletcher* v. *Fitchburg Rail-road*, 149 Mass. 127. *Donnelly* v. *Boston & Maine Railroad*, 151 Mass. 210. *Debbins* v. *Old Colony Railroad*, 154 Mass. 402 *Tyler* v. *Old Colony Railroad*, 157 Mass. 336.

So, too, it may be said to be a general, although not a universal rule, that, if there is anything to obstruct the view of a traveller on the highway at a crossing at grade, it is his duty to stop until he can ascertain whether he can cross with safety. *Fletcher* v. *Fitchburg Railroad, ubi supra,* and cases cited. *Debbins* v. *Old Colony Railroad, ubi supra.* See *Hubbard* v. *Boston & Albany Railroad,* 162 Mass. 132.

The case at bar is distinguishable from *Clark* v. *Boston & Maine Railroad,* 164 Mass. 434, and from *Conaty* v. *New York, New Haven, & Hartford Railroad,* 164 Mass. 572, in each of which cases an invitation was given to cross, in the former case by waving a flag, and in the latter by raising the gates.

*Judgment on the verdict.*