# Supreme Court Decisions.

## PRESUMPTION OF NEGLIGENCE IN CROSSING RAILWAY TRACK OBSCURED BY SMOKE.

THE BALTIMORE & OHIO RAILROAD CO. V. MCCLELLAN, ADMINISTRATRIX.

69 Ohio State—Decided, October 27, 1903.

*One in Full Possession of Senses—Should Exercise Them in Crossing Track—Obscured by Smoke and Steam—Negligence Not to Wait Till Smoke, etc., Clear Away—Presumption of Negligence—Absence of Rebutting Testimony—Refusal to Sustain Motion to Direct Verdict, Error, When.*

1. The rule that a person in full possession of his senses of sight and hearing should exercise them to protect himself from danger when about to cross a known track of a steam railroad at a street crossing, applies to a condition where the atmosphere is more or less clouded by steam and smoke, and it is negligence on his part which will defeat a recovery for injuries received from a passing train to undertake to cross without waiting for the atmosphere to clear so that his vision may be unobstructed, or taking other adequate means to ascertain the presence of danger.

2. Where the testimony of the plaintiff raises a clear presumption of negligence on his part which directly contributed to his injury, and no testimony is offered by him tending to rebut that presumption, it is the duty of the trial court to sustain a motion by the defendant made at the conclusion of plaintiff's evidence, to direct a verdict, and a refusal to sustain such motion is error.

Error to the Circuit Court of Richland County.

The action below was brought by defendant in error, Ida L. McClellan, administratrix, against The Baltimore & Ohio Railroad Co., to recover for the negligent killing of Madison Mc-

Clellan, who met his death by being run over by the caboose of a local freight train. The defense was a denial of negligence by defendant and a charge of contributory negligence on the part of the deceased. At the conclusion of the plaintiff's testimony defendant moved the court to direct a verdict for defendant, which was overruled and the cause submitted to the jury on plaintiff's testimony. A recovery was had which was sustained by the circuit court, and the company brings error. Facts necessary to an understanding of the case are stated in the opinion.

*J. H. Collins* and *Cummings & McBride,* for plaintiff in error.

*Douglass & Mengert,* for defendant in error.

SPEAR, J.; BURKET, C. J., DAVIS, SHAUCK and CREW, JJ., concur.

The accident occurred at a street crossing in the village of Butler, Ohio, ·about three o'clock of the afternoon of March 17, 1900, at a point where the main street of the village is crossed by two tracks of the company. At the point stated the street runs substantially north and south, and the railroad tracks substantially east and west. The station-house is at the southeast angle of the intersection, facing north. The southerly track is the main track and the northerly one a side-track, and both tracks curve sharply to the northeast from a point about one hundred and sixty feet from the crossing. About one hundred and sixty feet easterly from the crossing a spur-track starts on the south side of the main track and extends upon a curve several hundred feet in a northeasterly direction, veering to the north and northwest. To. the east of the station, some one hundred and fifty feet, stands a water tank. The depot platform extends from. the station-house northerly to the main track, easterly to a point near the water tank, and westerly to the line of the street. At the time of the accident there stood upon the side-track, headed west, a freight train with two locomotives attached, the forward one extending across the sidewalk and a few feet into the street proper. This train had been in that position twenty-five to thirty minutes. A passenger train known as No. 3 had passed east just before the accident. Upon the spur-track there had been standing a local freight train, placed there to allow the passage of No. 3, and intending to follow so soon as

No. 3 had passed. The caboose of this train stood near the point of junction of the spur with the main track, the locomotive being at the other end. The cylinder cocks of the head engine of the freight train (the one standing on the side-track headed west) were open, and considerable steam was escaping, making some noise, and a good deal of smoke was issuing from the smokestack. The smoke and steam came on the south side of the engine, much of it to the ground. It was a little windy at the time, and the wind being from the northwest carried the steam and smoke in a southeasterly direction; that is, toward the easterly portion of the station-house and over the main track.

The deceased was the keeper of a restaurant situated on the east side of the street a short distance north of the crossing. Just before the accident he had been to the station to inquire about some oysters he was expecting and was on his return when it occurred. He was seen coming out of the door of the freight office and passing westerly on the platform. He was also seen in the act of stepping off of the platform and onto the track, the main track. He was going in a northwesterly direction, his back being partially toward the east. Some two or three minutes after No. 3 had passed, the local freight, the train which had been waiting on the spur-track, backed westerly to clear the switch, coming at a speed of about twelve miles an hour. No alarm of any kind was given by the trainmen on the local, nor was any one stationed in the rear of the caboose to give warning. McClellan had just stepped down off the platform onto the track when the caboose struck him, having apparently made but two steps. He was not seen to stop from the time he was first seen going out of the door of the freight office until he was struck, nor was he seen to look to the east, the direction from which the caboose was coming. He had just reached the middle of the track, had made a second step, was in a walking position, walking in a northwesterly course, headed in that direction to avoid the front of the engine of the freight train.

Three features of the case call for comment. One respecting the presence of the locomotives of the freight train on the side track, another the operation of the local freight, and third, the action of the deceased himself.

1. It is claimed that the placing and maintaining of the locomotive partially across the street, and the producing there of smoke and of steam with accompanying noise, was of itself negligence. But locomotives can not be handled without the issuing of more or less smoke, nor can they be held in a waiting position, which was the fact as to this freight train, without the escape of more or less steam with some noise. A use which is a natural and necessary use of a locomotive can not be of itself a negligent use. The leaving of the nose of that forward locomotive across the sidewalk for the length of time it stood there was an improper act; it may for aught we know have been a misdemeanor, but it was not actionable negligence in this case, although its presence there is an incident to be considered.

2. The management of the local freight was of a different character. It stood upon that spur-track awaiting the passing of the passenger train, in a position where necessarily when it should back far enough to get upon the main track its rear would be protruded upon the street, and whether in backing the train that afternoon without the sounding of the whistle and the ringing of the bell the trainmen violated the statute or not, it certainly was incumbent upon them in some reasonable way to give warning, as by placing a watchman at the rear of the caboose, of the approach of the train to the street. The neglect of all attempt to warn was palpable negligence.

3. But what shall we say of the action of the deceased himself? He was possessed of all his faculties. He was a resident of the village and knew the location of the spur-track and its uses. He knew, apparently at least, that the passenger train had passed and that the local freight was in, for he was expecting a shipment of oysters probably coming by one or the other of those trains. He was at the station to inquire for that consignment, so that the presence of trains of that character, then or shortly before, near the station, would naturally be known to him. He had been on the platform far enough to the east to see the local freight as it stood upon the spur-track. He knew— that is, he must be held to have known—that a steam railroad track is necessarily a dangerous place; that locomotives and cars, once in motion, are not easily or quickly stopped. All this must be attributed to him. What, then, was his duty from the standpoint of self-preservation? Wasn't it to look and

listen for danger before stepping upon that track? What less could be expected of a person in possession of his senses? It is true that there is a more or less strong presumption of fact that the instinct of self-preservation will prevent a man from rushing into danger, but do we not see by every-day experience that men become careless of danger, either because of familiarity with it, or of temporary absence of mind which causes them to be oblivious of its presence? No doubt this latter condition obtained with the unfortunate gentleman who lost his life that afternoon, for, not only is there no evidence in the record that he either did look or listen, but the strong inference from the whole record is that he did neither.

But it is claimed, and this is the real and serious contention of counsel, that neither listening nor looking would have availed; that the noise of the escaping steam would have neutralized the one and the cloud of smoke and steam would have rendered useless the other. There really is no evidence in the record that warrants this conclusion. It is evident that the train must have been making some considerable noise as it approached the crossing, a noise different in character from that of the escaping steam, and the volume of the latter noise is left very shadowy by the testimony. Nor is there greater certainty about the presence of any considerable amount of steam and smoke in the immediate whereabouts of the deceased at the fatal moment. Four witnesses testified to the presence of steam and smoke in the vicinity, but one only (McLaughlin) was in a position to notice their presence at the moment of the accident. One witness (Crowner) was in the hotel office, about sixty feet south; he testified to the presence of smoke and steam generally, but was silent as to its presence at the moment when and the exact place where the accident occurred; he heard the noise of the trucks, and the first he saw of the accident was a man under the wheels. One witness (McCready) who saw all of the transaction of the accident from the telegraph office in the depot did not observe the presence of steam and smoke at all. Another (Miller) who stood by him in the office at the time, saw the smoke and steam, and observed that it was carried easterly and over the main track by the wind, but he did not see McClellan when he was struck, and did not know of the fact until his attention was called by McCready to the presence of a man

under the caboose. Another witness (McCurdy) testified with much fervor for plaintiff below, and was ready to speak with confidence respecting smoke and steam, but this witness met McClellan going west on the platform while he (the witness) continued some distance east, and did not then look around or know of the accident until he heard the scream, and finally admitted on the stand that he didn't know by looking anything about the situation at the moment. McLaughlin, above referred to, saw the whole of the accident. He was on the street about two hundred feet south from the scene, and speaks of the general presence of steam and smoke in the vicinity; there was considerable smoke; I noticed the steam; it (the steam and smoke) came on the south side of the engine and some of it came to the ground; it blowed to the ground and toward the depot; saw some along the sidewalk at the depot between that and the crossing. This much respecting the observation of the witnesses as to the presence of steam and smoke. It is to be noted that two only of the witnesses saw the deceased just before and when he was struck, viz., McCready and McLaughlin, and their testimony is vitally important as to his conduct. The former saw the caboose when within a very few feet of the deceased, and saw nothing to prevent McClellan seeing the caboose if he had looked. He first saw McClellan as he stepped down from the platform in front of the rear end of the local; was going in a northwesterly direction; he had just stepped down off of the platform onto the track when the train hit him. McLaughlin doesn't undertake to say that the deceased could not have seen the caboose if he had looked, but says he don't know; and adds that he didn't see him look. He saw McClellan when he was struck. He was in the middle of the tracks; had just stepped from the platform to the track, and had made his second step; was in the middle of the track in a walking position, walking in a northwesterly direction. As McClellan was headed northwest he would have had to turn somewhat to look to the east, and this witness had then good opportunity of noting whether he turned or not. But one other (McCready) had such opportunity, and he saw no attempt on McClellan's part to look. Both witnesses saw the caboose before McClellan was struck; indeed every witness saw the caboose as it was backing down, although the position of some of them was such as to

make their observation of much less significance than that of McCready and McLaughlin. Taken as a whole, however, the plaintiff's own evidence shows clearly that the deceased could have seen the caboose if he had looked before stepping on the track, and that he did not look.

It is manifest that the condition of the atmosphere would be changeable; what would be its condition at one moment might be entirely changed the next, and it is a most significant fact that every witness who saw the accident, or was near it, himself saw the caboose before it struck McClellan.

This *resume* is given not for the purpose of weighing the evidence, but for the purpose of illustrating the kind of a case which the plaintiff below presented, and which was sustained by the trial court and by the reviewing court as one warranting a recovery, and for the further special purpose of showing what ought to have been done with the motion to direct a verdict.

It must be apparent that the evidence produced by the plaintiff below at the trial, giving to each circumstance appearing in proof the most favorable construction possible, showed beyond question that the deceased was negligent in a manner directly contributing to his death unless the presence of steam and smoke released him from the duty to exercise care. Does the presence of the smoke and steam, conceding all that is claimed for it, change the case? He knew the exact situation. He knew the dangers as well as any man could; the dangers that lurk about the track of a steam railroad. He found, if the claim of plaintiff below is correct, a temporary obstruction to his vision. A little patience, a wait only of a moment, and the atmosphere would be cleared, and the opportunity for effective vision restored, and as afterward proved, the whole danger obviated. His stepping upon the track at that point at that moment was an unnecessary act. He could easily have crossed the street south of the track and then have been free from danger. The rule of law of this state is clear. A person in possession of his senses approaching such a steam railroad known to him must look and listen; failing in this he is guilty of contributory negligence which prevents a recovery from injuries arising from such failure, unless some further fact appears which relieves him. In the present case the plaintiff's testimony raised a clear

presumption of contributory negligence, and no tangible proof whatever was given which tended to rebut that presumption.

The case made is not one which presented a conflict in the evidence on any vital point. If such conflict had been presented then the motion to direct a verdict should have been overruled and the cause given to the jury. The rule is that whether or not there is evidence tending to prove an essential fact is a question for the court, and if it be determined that there is not, then there can be conflict, and there is no question for the jury. The case is wholly dissimilar from the reported cases where a close question of fact appears and the judgment of a jury is required to determine it. As in *Hart* v. *Devereaux*, 41 Ohio St., 565, where the deceased was driving a pair of spirited horses over a crossing at the side of which stood a locomotive blowing off steam which frightened the horses, and so engaged the driver's attention that he did not observe the approach of an express train coming rapidly and without warning from the opposite direction, the view down the track being obscured by buildings, and was killed by the express. As, also, in *Railway Co.* v. *Snell*, 54 Ohio St., 197, where there was a conflict in the evidence as to whether the injured party was exercising his faculties of seeing and hearing, and it was held a proper question to be submitted to the jury. The case at bar more nearly resembles *Railway Co.* v. *Whitacre*, 35 Ohio St., 627, where it is held that where a person familiar with a dangerous railroad crossing, in passing over the same, neglects the exercise of any care to ascertain if a passing train is near, he is guilty of negligence, and the mere fact that he had forgotten that he was in the vicinity of the crossing will not excuse; also that where the plaintiff's own testimony raises a presumption of contributory negligence the burden rests upon him to remove it. A point pertinent is held in *Railway Co.* v. *Depew*, 40 Ohio St., 121: That a person upon a railroad track may not rely upon a signal being given of the starting of a train, and that the expectation that such signal will be given will not relieve such person from constant watchfulness for his safety. Law applicable to the present case is held in *C., C., C. & I. Ry. Co.* v. *Elliott*, 28 Ohio St., 340, as follows:

"The omission to ring the bell or sound the whistle at public crossings is not of itself sufficient ground to authorize a re-

covery, if the party, notwithstanding such omission, might by the exercise of ordinary care have avoided the accident. What is such contributory negligence as will defeat a recovery is usually a question of mixed law and fact, to be determined by the jury from all the circumstances of the case and under proper instructions from the court; but where the undisputed facts show that by the exercise of ordinary care a party might have avoided injury, he can not recover. It is the duty of a traveler upon the highway, when approaching a railroad crossing, to make use of his senses, to ascertain if there is a train in the vicinity; and if, when in full possession of his faculties, he fails to see or hear anything, when a prudent man, exercising his eyes and ears, with ordinary care, would have discovered a train in close proximity, and he is thereby injured, he is guilty of such negligence as will prevent a recovery.''

Our case also in one aspect resembles *Railroad Co.* v. *Skiles,* .64 Ohio St., 458. It is there held that where a person without looking or listening, steps upon a railway track from a place of safety on a platform, immediately in front of and close to a backing switch engine and is injured, he is guilty of contributory negligence and can not recover.

The propositions here indicated are supported by a great number of cases, some of which are here cited: *Railroad Co.* v. *Crawford,* 24 Ohio St., 631; *Heaney* v. *L. I. R. R. Co.,* 112 N. Y., 122; *Hoyt* v. *The City of Hudson,* 41 Wis., 105; *Bancroft* .v. *B. & W. R. R. Co.,* 97 Mass., 275; *McCrory, Adm'x,* v. *C. M. & St. P. Ry. Co.,* 31 Fed. Rep., 531, opinion by Brewer, J.; *D. & R. G. Co.* v. *Ryan,* 17 Colo., 98; *Mann* v. *R. & S. Y. Co.,* 128 Ind., 138; *C. K. & W. R. R. Co.* v. *Fisher,* 49 Kan., 460; *Chase* v. *M. C. R. R. Co.,* 78 Me., 346; *I. C. R. Co.* v. *Hall,* 72 Ill., 222.

A number of cases in other states are cited which with more or less force sustain the contention of plaintiff in error, but the rule in Ohio, as we understand it, evidenced by the general trend of decisions, is in accord with the conclusions here indicated.

We are of opinion that the motion to direct a verdict for defendant should have been sustained. The judgments below will therefore be reversed and judgment entered for plaintiff in error.

*Reversed.*