ALICE KOVARIK, Appellant, v. THE LONG ISLAND RAILROAD COMPANY, Respondent.

Second Department, November 21, 1919.

Negligence — railroads — injury to pedestrian caused by falling on snow-covered cattle guards near station — necessity for warning of existence of guard — evidence — injuries to others at same place — section 52 of Railroad Law construed — trespass.

It is the duty of a railroad company which has constructed cattle guards on its railroad tracks between its station grounds in a village and a street crossing, which are dangerous to pedestrians crossing them, to give warning of their existence, especially when they are hidden by a covering of snow.

In an action to recover damages for injuries sustained by the plaintiff in falling on the said cattle guards, evidence is admissible on behalf of the plaintiff that the guards were installed a few years prior to the accident and as to whether they were placed on both sides of said street crossing.

The fact that other persons had been injured by falling on the same cattle guards at the same point is admissible on behalf of the plaintiff on the question of notice to the defendant of the dangerous condition.

The liability imposed by section 52 of the Railroad Law for injuries to domestic animals arising from the failure of a railroad company to construct cattle guards cannot justify a railroad company in exposing passengers to injury by such guards at street crossings alongside their station grounds, especially when by reason of the guards being covered with snow the danger of crossing them is not apparent.

The failure of the railroad company to construct a wing fence from its line fence to the railroad and between its station grounds and the public street, if not an invitation to enter the station grounds at that point, might make one who enters there an unintentional trespasser without criminal intent.

JENKS, P. J., and BLACKMAR, J., dissented, with opinion.

APPEAL by the plaintiff, Alice Kovarik, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Suffolk on the 27th day of November, 1918, upon a dismissal of the complaint by direction of the court at the close of plaintiff's case.

*Frank W. Shaw*, for the appellant.

*Dominic B. Griffin* [*Joseph F. Keany* with him on the brief], for the respondent.

PUTNAM, J.:

Defendant maintains its passenger station in Patchogue in the block between Ocean avenue on the east and Railroad avenue on the west. Patchogue village by the 1915 census had 4,506 inhabitants. It was not proved how near the passenger station was to this Ocean avenue crossing, but the photographs and diagram in evidence indicate that east of the station was an express house with baggage platform in line with the station platform. The eastern end of this baggage platform had three steps which came down to the ground about 100 feet from Ocean avenue. To the south, defendant's station grounds had a gate opening from Ocean avenue. The photographs also show at least two openings in the street fence, giving access therefrom toward the steps of the express house. A cattle guard covered the double tracks to an area of eight and one-half feet by twenty-four feet, which came within five and one-half feet of the Ocean avenue building line. Strips of sheet steel were cut into raised triangles with sharp edges forming upright teeth three inches high and three inches apart. There was no sign or other warning to persons against entering the station grounds across these tracks. At the south side of the crossing was a small wing fence. But at the north there was no wing fence whatever, leaving an open space between the north rail and the side fence by the post of the drop gate.

On the day of the casualty plaintiff had come to Patchogue under a round-trip ticket from Sayville, and had left the station by the passenger gateway south of the tracks. She had no previous acquaintance with the locality. After having been engaged in shopping in Patchogue, in the afternoon

Second Department, November, 1919.    [Vol. 189.

she came back along Ocean avenue, intending to take a return train to Sayville. At the crossing she saw this train standing alongside the station. It had been snowing so that these guards were covered. Plaintiff did not see the projecting points, or know that such guards were there. In her haste she started from this crossing, intending to go diagonally over the tracks to the train. She struck these steel points beneath the snow, and fell, cutting her arm, also piercing her kneecap, and sustained other injuries.

At the trial, plaintiff sought to show that in 1912 these cattle guards were installed at the station side of this Ocean avenue crossing, but this evidence was excluded. Plaintiff also produced a witness to prove that others had been injured at this same cattle guard, but this was also disallowed. At the close of her proofs, she was nonsuited.

In 1851, HAND, J., said that " cattle guards in the streets of a city or village would be nuisances " (*Vanderkar* v. *Rensselaer & Saratoga Railroad Co.*, 13 Barb. 390, 393), which applied to the older and less dangerous guards by openings covered by wooden strips. Where snow had gathered on a station sidewalk so that passengers took to the railroad tracks to reach the highway, an alighting passenger fell into this snow-covered opening and was there struck by a passing train. Mr. Justice TALCOTT, writing the unanimous opinion of the court, declared: " In this case the leaving of the plank sidewalk in such a condition as that passengers from the station to the highway, were obliged to take the defendant's tracks, and then suffering the snow to accumulate in an open cattle guard, so that there was nothing discernible upon the surface to indicate the existence of a cattle guard or any other hindrance to a safe and expeditious crossing operated as a mere trap." (*Hoffman* v. *N. Y. C. & H. R. R. R. Co.*, 13 Hun, 589, 593; affd., 75 N. Y. 605.)

In placing these inherently dangerous guards so near the station and between it and a village highway crossing, I think the defendant owed a duty of warning against such a danger, especially when they were hidden under the snow. Cattle guards are not to stop passengers or to exclude persons from entering station precincts. The lawful use of them is to prevent the ingress of domestic animals. I think plaintiff

should have been permitted to show fully if these guards were placed there in 1912, also whether they were installed on both sides of this crossing. If not, there might be an inference that the real purpose was to exclude pedestrians. The fact of previous injuries therefrom was also relevant to the question of warnings or notice.

Laws of 1915, chapter 281, inserted the word " cattle-guards " in section 52 of the Railroad Law, so as to declare that if cattle-guards are not provided or maintained a railroad would be liable for damage to animals on the tracks. However, such risk toward estrays in a populous village cannot justify a railroad company in exposing passengers to hurt by such guards at street crossings alongside station grounds when allowed to present the deceptive appearances here shown. (*Hulbert* v. *New York Central R. R. Co.*, 40 N. Y. 145.)

The absence of any wing fence so as to leave an open space by the north tracks, if not an invitation to enter the station grounds, at least will make plaintiff an unintentional trespasser, without criminal intent. (*People* v. *Stevens*, 109 N. Y. 159, 163.)

I advise to reverse and to grant a new trial, with costs to appellant to abide the event.

RICH and JAYCOX, JJ., concurred; JENKS, P. J., read for affirmance, with whom BLACKMAR, J., concurred.

JENKS, P. J. (dissenting):

I dissent from the judgment about to be handed down. I think that there was no question for the jury raised by the plaintiff at the close of her case and that she was dismissed properly. When she left the customary way of access to the station, to cut across the defendant's lands to its station, she admittedly did so to save time. There is no evidence of license or invitation express or implied. She found no way, but made it. She entered the lands as a trespasser and passed along between its rails as a trespasser misdemeanant. (*Marra* v. *New York Central & H. R. R. R. Co.*, 139 App. Div. 707, citing *Keller* v. *Erie Railroad Co.*, 183 N. Y. 67, 72.) Such was her status when she stepped

forward upon the cattle guard that was located entirely within those rails. As a trespasser she took the land as she found it (*Magar* v. *Hammond*, 183 N. Y. 387; *Birch* v. *City of New York*, 190 id. 397), and the sole obligation of the defendant was not to injure her willfully or recklessly (*Larmore* v. *Crown Point Iron Co.*, 101 N. Y. 391; *Keller* v. *Erie Railroad Co.*, 183 id. 67, 71, 72; *McCaffrey* v. *Baltimore & Ohio R. R. Co.*, 201 id. 115; *Petur* v. *Erie Railroad Co.*, 151 App. Div. 578; affd., 208 N. Y. 615), for the reason that a trespasser is not *caput lupinum.* (*Palmer* v. *Gordon*, 173 Mass. 410.) That the cattle guard was dangerous cast no liability on the defendant. Liability must be found in danger and deceit, as a spring gun or a snare. (*Larmore* v. *Crown Point Iron Co., supra.*) The full danger of the cattle guard was obvious. It was not a trap. It was not a deceit, but a deterrent. It did not lure to injury, but halted by its threat of injury.

The defendant was not bound to fence its land against the plaintiff. It was not bound to set up a sign that there was no passageway at this point. (*Stevens* v. *Nichols*, 155 Mass. 472.) It was not bound to warn against a danger that was obvious and that could not be incurred save by a trespasser misdemeanant. The defendant was not liable for negligence save for that shortcoming that is aptly described as "affirmative negligence" in *Larmore* v. *Crown Point Iron Co.* (*supra*). If negligence constituted liability, then there was contributory negligence on the part of the plaintiff that barred her and justified her dismissal. (*Parsons* v. *N. Y. C. & H. R. R. R. Co.*, 85 Hun, 23; *Heiss* v. *C., R. I. & P. Ry. Co.*, 103 Iowa, 590; *Mason* v. *Mo. Pac. Rly. Co.*, 27 Kan. 87; *Sturgis* v. *D., G. H. & M. R. R. Co.*, 72 Mich. 619; Hutchinson on Carriers [3d ed.], 1062. See, too, *Frost* v. *Grand Trunk Railroad Co.*, 10 Allen [Mass.], 387; *Bancroft* v. *Boston & Worcester Railroad Corporation*, 97 Mass. 275.)

The proposition of the prevailing opinion embraces three features, namely, the inherent danger of the fabric, the location of it, and the snow that had fallen to cover it. I have to consider only the snow. There was evidently not a deep covering of snow, because the plaintiff saw the rails, recognized the two tracks and the right of way when she turned in upon the land, and the cattle guard with upright teeth was between

the rails. All we learn of the time of the snowfall is the testimony that it had not fallen since morning. I think that there was no obligation to clear off the snow from the rails or the cattle guard. Even if there were, the omission was negligence, and not the affirmative negligence that could only avail a trespasser. And despite the snow the plaintiff admittedly saw the rails as she walked between them, and hence was a willing trespasser misdemeanant.

Of the three cases cited in the prevailing opinion, the first declares a cattle guard in a street a nuisance, but this cattle guard was not in a street; the second presents the " very important " feature of snow piled up by the defendant in the usual way of access so as to render it impassable and the consequence that the passengers were forced to cross the rails; and the third presents the fact that the excavation of the former cattle guard was dangerously near the place where passengers were admitted to the trains.

I vote to affirm.

BLACKMAR, J., concurred.

Judgment reversed and new trial granted, costs to abide the event.